C. REES JENKINS AND MRS. BETTY M. JENKINS, ORIGINAL PLAINTIFFS, GREAT AMERICAN INSURANCE COMPANY, ADDITIONAL PARTY PLAINTIFF v. EUGENE KNOX HELGREN; GENE'S ELECTRIC MOTOR REPAIR, INCORPORATED; AND HENRY DIXON IVEY, DEFENDANTS AND THIRD-PARTY PLAINTIFFS v. BENJAMIN FOSTER COMPANY, THIRD-PARTY DEFENDANT

No. 7516SC122

(Filed 6 August 1975)

1. Fires § 3— use of flammable glue — failure to show source of fire — sufficiency of evidence of negligence

Where there was ample evidence to support a jury finding that defendants negligently permitted a concentration of highly explosive fumes to build up inside an air duct on which they were working and that their negligence created a substantial risk that in some manner the fumes might become ignited, failure of the evidence to establish with certainty any particular source of the spark which ignited the

fumes was not fatal to plaintiffs' claim for damages to their house and contents resulting from the fire.

2. **Fires § 3; Negligence § 27— warning label on glue can — change in label subsequent to fire — evidence inadmissible**

In an action to recover for damages to plaintiffs' house sustained in a fire allegedly caused by defendants' negligent use of a flammable glue, the trial court did not err in refusing to allow evidence concerning a change which was made three years after the fire in the warning label on the glue can, since defendants' conduct must be judged on the basis of the label which actually appeared on the can of glue which they were using when the fire occurred; also, the evidence was properly excluded insofar as the original defendants' claim over against the third-party defendant glue manufacturer was concerned, since evidence of the taking of added precautions after an accident is not admissible as an admission of previous negligence.

3. **Fires § 3; Negligence § 27— fire from use of flammable glue — evidence as to nonflammable glue — admissibility**

In an action to recover for damages to plaintiffs' house sustained in a fire allegedly caused by defendants' negligent use of a flammable glue in installing insulation in an air return duct, the trial court did not err in allowing plaintiffs to introduce evidence concerning a glue made by the same manufacturer of the glue used by defendants which was not flammable and which was suitable for use to adhere insulation to sheet metal, even in the absence of proof that defendants knew that the safer glue existed, since defendants held themselves out as knowledgeable and capable of performing the installation in a safe and competent manner, and defendants by implication represented that they had such knowledge, both as to available materials and safe and appropriate methods of installation, as was generally available in the industry.

4. **Fires § 3; Negligence § 29— warning on glue can — no negligence of manufacturer — directed verdict proper**

The trial court did not err in directing verdict in favor of the third-party defendant glue manufacturer since the cautionary warning which appeared on the can of glue which defendants used was clear, comprehensible and adequate to put them on notice of the danger involved in its use, and the fire which was caused by defendants' allegedly negligent use of the glue and in which plaintiffs sustained damages occurred, not because of any inadequacy of the warning given, but because defendants utterly failed to heed that warning.

APPEAL by original defendants from *Clark, Judge*. Judgment entered 16 September 1974 in Superior Court, ROBESON County. Heard in the Court of Appeals 15 April 1975.

On 19 May 1969 a fire in the home of Mr. and Mrs. Jenkins caused extensive damage to the house and its contents. The

Jenkinses, as original plaintiffs, brought this action to recover damages against the original defendants, alleging that the fire was caused by original defendants' negligence while installing insulation in the air return duct connected to the furnace in plaintiffs' residence. Great American Insurance Company, which provided fire insurance coverage on plaintiffs' home, was joined as an additional party plaintiff. Defendants filed answer in which they denied they were negligent, and in a third-party complaint defendants alleged that if it should be found that they were actionably negligent as alleged in the complaint, then the third-party defendant, Benjamin Foster Company, manufacturer of the glue used by defendants in installing the insulation, was also actionably negligent in causing any damages sustained by plaintiffs in that it failed to give adequate warning to the users of the glue concerning that substance's highly inflammable and explosive qualities.

Plaintiffs' evidence showed the following: In order to reduce noise from a fan in the air circulating system in the Jenkins home, the defendant, Gene's Electric Motor Repair, Incorporated, under an agreement with Mr. Jenkins, undertook to install insulation on the inside of the air return duct in the Jenkins residence. This duct, made of galvanized metal, was 21 inches wide by 15 inches deep and was about four feet long, with about two feet extending above and two feet extending below the floor of the den or family room of the residence. The duct had two right angle turns in it and had two openings, one at the top, covered by a metal grille, facing the inside of the family room, and one at the bottom opening into the air fan and furnace, which were located in the crawl space beneath the floor of the house.

On the afternoon of 19 May 1969 two employees of Gene's Electric, Ivey and Liles, went to the Jenkins residence to install the insulation. It was a warm day, the temperature being about 75 degrees, and it was raining. Ivey worked in the den at the top of the duct, for that purpose removing the metal grille over the duct opening, while Liles worked at the bottom of the duct in the crawl space underneath the house. Prior to commencing work, Ivey turned the thermostat to the "off" position to keep the fan from coming on while Liles was underneath where the fan was, but, except for this, Ivey took no other precautions prior to commencing work. The two men were

approximately 2½ to 3 feet apart and could talk with each other while they worked, and Ivey could see Liles when Liles was working directly beneath him. Liles took measurements of the inside of the duct, gave these to Ivey, and Ivey cut the fiber glass insulation to measurement with a pocket knife. For the purpose of attaching the insulation to the metal on the inside of the duct, the men had brought with them from their employer's Fabrication Shop a one-gallon can of glue. The glue was applied to the metal surface on the inside of the duct with a four-inch paint brush which had a metal band on it about two inches wide. Ivey first applied glue to the interior of the top section of the duct and then handed the can of glue and the brush down through the duct to Liles who commenced applying glue to the interior of the bottom section of the duct. While so doing, he left the opened can of glue inside the duct. After the men worked at the house some forty-five minutes and after Liles had been under the house for ten to fifteen minutes, and while he was in process of painting the glue onto the interior wall of the duct, there was a sudden burst of flame, which Liles described as "just an explosion," inside the duct. Yellow flames completely filled the duct, burning Liles's hand and face. Yellow flames came out of the duct at the top, flowed up the wall above the duct opening, "just flowed up like steam rising, right quick," and from there the fire spread rapidly to the ceiling. Ivey obtained a fire extinguisher from the truck, but the powder in the extinguisher ran out quickly. The Lumberton Fire Department was called and the fire was extinguished. The fire caused extensive damage to the house and its contents.

The glue used by defendants was manufactured by third-party defendant, Benjamin Foster Company, and was known as "Foster Stic-Safe Adhesive 85-15." In its wet state this glue gives off a flammable fume or vapor which burns with a yellow flame. The solvent used as an ingredient in this glue is hexane, and there was testimony that a small percentage of hexane vapor, when mixed with air, will ignite, and at a lower temperature, than is the case with 100 octane gasoline. There was also testimony that hexane vapor is heavier than air and has a tendency to flow to low places and to settle and stay in one place if not ventilated.

The label appearing on the regular gallon container of Foster Stic-Safe Adhesive 85-15 distributed by the Foster Company as of 19 May 1969 contained the following:

# CAUTION: FLAMMABLE MIXTURE.
# DO NOT USE NEAR FIRE OR FLAME. NTFD C of A 2499
**Keep container closed when not in use. Use with adequate ventilation. Avoid prolonged breathing of vapor. Avoid prolonged or repeated contact with skin.**

Other evidence will be referred to in the opinion.

The court denied the original defendants' motions for a directed verdict as to plaintiffs' claim against them and allowed the third-party defendant's motion for a directed verdict as to the original defendants' and third-party plaintiffs' claim against it. The jury answered issues as to negligence and damages in favor of the plaintiffs, and from judgment entered, the original defendants appealed.

*McLean, Stacy, Henry & McLean by Dickson McLean, Jr. for original plaintiff appellees.*

*Teague, Johnson, Patterson, Dilthey & Clay by Grady S. Patterson, Jr. for additional party plaintiff appellee.*

*Quillin, Russ & Worth by D. P. Russ, Jr. for original defendants and third-party plaintifff appellants.*

*Anderson, Nimocks & Broadfoot by Hal W. Broadfoot for third-party defendant appellee.*

PARKER, Judge.

Appellants contend that their motions for a directed verdict as to plaintiffs' claim against them should have been allowed because the evidence did not show the source of the spark which ignited the fumes. The evidence suggested, but fell short of clearly establishing, a number of possible sources. For example, the furnace with which the air return duct was connected was a gas fired furnace which had a pilot light of the type which stayed on continually, and although Liles testified that prior to commencing work in the air return duct he cut off the gas valve leading to the furnace, he also testified that after he cut the valve "[t]here would have been gas remaining in the line between that valve and the pilot light," thus leading to the possibility that the gas remaining in the line past the cut-off

valve could have continued to feed the pilot light. There was also evidence that one of the workmen, presumably Ivey, was seen smoking a cigarette ten or fifteen minutes before the fire started and that his cigarette butt was seen on the floor directly around the corner from the vent in the family room. There was also evidence that while Ivey and Liles were installing the insulation, a TV set was operating in the family room and various electrical and gas fired appliances, none of which had been disconnected, were located in the nearby kitchen and utility rooms. There was also evidence that it was warm and raining, and although there was no lightning, weather conditions at the time were such as to cause a build-up of static electricity in the air.

[1]   In our opinion the failure of the evidence to establish with certainty any particular source of the spark which ignited the fumes was not fatal to plaintiffs' cause. There was ample evidence to support a jury finding that defendants negligently permitted a concentration of highly explosive fumes to build up inside of the air duct on which they worked and that their negligence created a substantial risk that in some manner the fumes might become ignited. Certainly it is both probable and foreseeable that fire will be the consequence of a serious fire hazard. Beyond question the fumes which defendants here allowed to accumulate constituted a serious fire hazard as a direct consequence of which the damaging fire occurred. One whose negligence creates the hazard of fire cannot escape responsibility merely because the source of the triggering spark may not be shown. *Ashley v. Jones*, 246 N.C. 442, 98 S.E. 2d 667 (1957); *see generally* Byrd, *Actual Causation in North Carolina Tort Law*, 50 N.C. L. Rev. 261 (1972). Even if the source of the spark was an Act of God, for which defendants could not be responsible, yet they may be held liable if their negligence created the hazardous condition upon which the act operated. Thus, in *Lawrence v. Power Co.*, 190 N.C. 664, 130 S.E. 735 (1925), judgment for plaintiff was sustained in a case in which the evidence showed that the fire which damaged plaintiff's property was started when lightning struck defendant's transmission line causing an insulator on a tower to melt and fall upon inflammable matter below, our Supreme Court finding sufficient evidence of actionable negligence on the part of the defendant in its having permitted dry grass to accumulate on its right-of-way beneath the tower. We hold that the evidence in the present case was sufficient to support the jury's verdict finding that defendants' negligence was a direct and proximate

Jenkins v. Helgren

cause of the fire which damaged plaintiffs' property, and the original defendants' motions for directed verdict as to plaintiffs' claim against them were properly denied.

[2] Appellants contend the court erred in refusing to allow them to introduce evidence concerning a change which was made after the fire in the warning label on the Foster Stic-Safe 85-15 glue can. In 1972, approximately three years after the fire which gave rise to the present case, the label was changed to read:

"DANGER! EXTREMELY FLAMMABLE VAPORS MAY CAUSE FLASH FIRE.

Vapors may ignite explosively. Prevent buildup of vapors— open all windows and doors—use only with cross ventilation. Keep away from heat, sparks, and open flame. Do not smoke, extinguish all flames and pilot lights, and turn off stoves, heaters, electric motors, and other sources of ignition during use and until all vapors are gone.

Close container after use. Keep out of reach of children."

We find no error in the exclusion of evidence as to the change in the label. Insofar as plaintiffs' claim against the original defendants is concerned, defendants' conduct must be judged on the basis of the label which actually appeared on the can of glue which they were using when the fire occurred, not on the basis of what may have appeared on a similar can some three years later. In this connection, both Ivey and Liles testified that, although they recalled seeing the words "Caution" and "Flammable" on the can which they used, they did not read the remainder of the warning and took no action to provide adequate ventilation while using the glue as the warning on the label advised. Thus, by their own admissions they negligently failed to heed the warning which was actually given them.

Insofar as the original defendants' claim over against the third-party defendant is concerned, the evidence of the change in the label was also properly excluded. It is well settled that evidence of the taking of added precautions after an accident is not admissible as an admission of previous negligence. 2 Stansbury's N. C. Evidence (Brandis Rev.) § 180, p. 58. Appellants acknowledge this, but contend that the evidence should have been admitted in the present case under the exception to the general rule that such evidence is admissible "to show

existing conditions under certain circumstances at the time of the injury," citing *Shelton v. R. R.*, 193 N.C. 670, 139 S.E. 232 (1927), from which appellants argue that evidence of the changed label was admissible "to show the nature and condition of the product at the time of the fire," pointing to other evidence in the record that no change was made in the chemical formula of the glue between the time of the fire and the time of the appearance of the changed label. If it be granted that the evidence was admissible for that limited purpose, we see no prejudice to appellants, as ample other evidence was admitted which fully established "the nature and condition of the product at the time of the fire." Appellants' assignment of error directed to the exclusion of evidence as to the change in the label is overruled.

[3] The appellants assign error to the court's permitting plaintiffs to introduce evidence over objection concerning the existence, availability, and properties of another Foster Company adhesive product known as "Foster Stic-Fas Adhesive 85-20" as compared with the "Foster Stic-Safe Adhesive 85-15" which defendants used. The evidence showed that this 85-20 product was, like 85-15, suitable for use to adhere insulation to sheet metal, but that, unlike 85-15, it was nonflammable. The evidence also showed that this nonflammable adhesive was on the market and was available in 1969, though at a slightly higher cost than the 85-15 flammable adhesive which defendants used. In their brief appellants state that "[e]ven though a safer product may have existed, the plaintiffs' evidence did not show any knowledge whatsoever by the defendants or its employees of the existence of Foster Stic-Fas 85-20, and it is contended that this failure of proof renders the evidence relating to 85-20 glue totally irrelevant and immaterial." We do not agree. Defendants had recommended the placing of insulation in the air return duct in the Jenkins residence as a means of cutting down noise from a squeaking fan. By agreement with Mr. Jenkins, defendants undertook to perform this work. By clear implication, defendants held themselves out as knowledgeable and capable of performing the work in a safe and competent manner. Included in this was the choice of appropriate materials and methods, both of which were left entirely to defendants. By implication defendants represented that they had such knowledge, both as to available materials and safe and appropriate methods of installation, as was generally available in the industry. Thus, defendants were under a duty to plain-

Jenkins v. Helgren

tiffs, not only to select safe materials and to follow proper methods in their installation, but also to inform themselves as to what safe materials and proper methods were available. Defendants may not now plead as a defense their own ignorance in a field in which they held themselves out to be competent. Evidence of the safer product, concerning which defendants were under a duty to be informed, was properly admitted even in the absence of direct evidence that defendants knew of its existence.

[4] The directed verdict in favor of the third-party defendant was properly entered. The cautionary warning which appeared on the can of glue which defendants used was clear, comprehensible, and adequate to put them on notice of the danger involved in its use. The fire occurred, not because of any inadequacy of the warning given, but because defendants utterly failed to heed that warning. This was not a household product distributed for use by the inexperienced. It was an industrial product, sold and distributed "for industrial use only," as the label on the can expressly stated. In the present case it was in fact being used, as it was intended, not as a consumer product by some unknowledgeable householder, but as a product for industrial use by workmen who held themselves out as being knowledgeable and experienced in its use. The Federal Hazardous Substances Act, Chap. 30 of Title 15 of the U. S. Code, had no application in the present case, and the court properly excluded the provisions of that Act from the jury's consideration.

Appellants have made a number of other assignments of error relating to the court's rulings admitting or excluding evidence and to portions of the court's charge to the jury. We have carefully examined all of these and find no error such as to warrant the granting of another trial.

No error.

Chief Judge BROCK and Judge ARNOLD concur.