WOODALL FLYING SERVICE, INC. v. MERELE E. THOMAS

No. 7514SC366

(Filed 1 October 1975)

1. Aviation § 3.5— improper landing — damage to plane — sufficiency of evidence

   In an action to recover damages to an aircraft allegedly crashed due to the negligence of defendant, the trial court erred in granting defendant's motion for directed verdict where the evidence was sufficient to permit but not compel the jury to find that defendant was negligent in approaching and landing the aircraft and that such negligence was a proximate cause of the damage complained of.

**2. Aviation § 2— area beyond runway — failure to maintain — no contributory negligence as matter of law**

In an action to recover damages to an aircraft where the evidence tended to show that defendant touched down on the runway and veered to the right, rolled off the runway then through a mowed area off the runway to an area of uncut grass and rough and bumpy ground where the plane blew a tire and flipped over, the evidence was insufficient to raise an inference of contributory negligence with respect to plaintiff's failure to maintain the area adjacent to the runway beyond the mowed area.

**3. Aviation § 2— radioed instructions — no contributory negligence as matter of law**

In an action to recover damages to an aircraft allegedly crashed due to the negligence of defendant where the evidence tended to show that plaintiff radioed landing instructions to defendant pilot, evidence was insufficient to establish plaintiff's contributory negligence as a matter of law either in undertaking to give instructions at all or in the instructions that were given.

APPEAL by plaintiff from *Hall, Judge.* Judgment entered 13 December 1974 in Superior Court, DURHAM County. Heard in the Court of Appeals 28 August 1975.

This is a civil action wherein the plaintiff, Woodall Flying Service, Inc., seeks to recover damages to its single engine Cessna 172 aircraft which allegedly crashed due to the negligence of the defendant, Merele E. Thomas, who was piloting the aircraft under a lease agreement with the plaintiff.

The evidence when considered in the light most favorable to the plaintiff tends to show the following: On 11 June 1971, defendant rented a single engine Cessna 172 aircraft from the plaintiff for the purpose of flying to Marion, Ohio, that day on a pleasure trip, and returning to Durham Skypark, the place of rental, on 13 June 1971. He delayed the return flight until 14 June 1971 when he returned nonstop, carrying his mother and father as passengers.

The return flight, the subject of the case, might be broken up into four segments. First, from Marion, Ohio, to Danville, Virginia, he proceeded according to his flight plan but he encountered unexpected winds. Because of the winds and the crossing of the mountains, he ascended to an elevation as high as 9,500 feet. At that elevation he was required to use carburetor heat which used additional fuel. He took no steps to "lean out" the fuel, a process designed for fuel conservation.

The second phase covers the time from which defendant passed over Danville at 1:24 p.m. until the time he sighted Durham Skypark and established radio contact with it at approximately 2:34 p.m. At the time he passed Danville, defendant by his own estimation had enough gas for an additional one hour and fifteen minutes flying time with approximately 19 to 21 minutes flying time remaining to arrive at Durham Skypark. Approximately five minutes out from Danville, defendant experienced problems with his gyro compass, and as he reported to Mr. Truebe, the Federal Aviation investigator, he became disoriented and lost until 2:21 p.m. before he contacted Raleigh-Durham Airport and reported being lost and out of gas. They directed him to Durham Skypark which he sighted at 2:34 p.m., making radio contact soon thereafter. While there is some contradiction in the evidence as to whether defendant stated he was out of gas or low on fuel, the evidence does show that for approximately 52 minutes defendant was apparently lost, but did not attempt to radio for help until his fuel supply was nearly exhausted, although he was within an area to be able to radio for assistance.

The third phase covers the period of time from radio contact with Durham Skypark until a point of time just prior to touching down. Mr. Woodall, owner of plaintiff corporation, testified as to the proper procedure for making the approach and landing at the airport in a Cessna 172. Basically it involved a downwind leg, parallel to the runway but about 4000 feet out from the center of the runway. It should be made at an altitude of 800 feet, at 90 miles per hour, and 10 degrees of wing flaps should be extended about midway down the leg. At the end of the downwind leg, the pilot should turn 90 degrees toward the runway at a distance about 1000 feet beyond the end of the runway. This begins the base leg and should be made at approximately 500 feet altitude, 80 miles per hour and with flaps extended to 20 degrees. At the end of the leg, the pilot should again turn 90 degrees to be facing up the runway. The beginning approach should be 70 miles per hour with 40 degrees flaps extended. Speed should be reduced as elevation decreases and the plane should be landed in the first 25 percent of the runway.

When defendant Thomas sighted the airport, he reported that he was above the airport and out of gas. Mr. Matia, an employee of plaintiff, maintained radio contact with defendant by means of another radio in an airplane on the field. Mr. Woodall,

who testified as to what occurred, stood about 10 feet away. Woodall's testimony was to the effect that on the downwind leg defendant was only 2500 feet out rather than 4000 feet, and that he was going 100 miles per hour instead of 90, and that he was 200 feet too high. Additionally, no flaps were extended until near the end of the leg when he was told to extend some flaps by Mr. Matia. On the base leg, defendant was again too close—only 500 feet out instead of 1000. He was also going too fast by 10 miles per hour and did not extend flaps to 20 degrees until again directed to do so somewhere near the end of the leg or beginning of the landing leg. On the last leg, defendant was still 10 miles per hour too fast and did not have enough flaps extended. He was told from the ground to execute a series of "S" turns to slow the plane. He responded, but only executed shallow turns where the witness said deep turns were necessary. Defendant then began drifting off the landing path. He was told from the gound to realign himself with the runway which he attempted to do. At the end of this phase, he was nearing landing in the last quarter of the runway.

The fourth phase is the actual touchdown. When the defendant landed, there was evidence that he was going 50 miles per hour when the optimum speed was 45 miles per hour. There was evidence that he landed the plane at too flat an attitude causing the plane to bounce approximately 10 feet up, and that he landed at an angle not having completely realigned himself with the runway. When the plane touched down again it veered to the right, rolling off the runway at about 10 miles per hour. The immediate area surrounding the runway was maintained only a few feet beyond the lights ringing the runway. The plane apparently rolled through the mowed area off the runway to an area of uncut grass and rough and bumpy ground. The nose wheel of the plane hit a hole, blowing the tire and flipping the plane over. After it flipped, it slid about one foot, then came to rest. Defendant had touched down at a point about 750 feet from the end of the runway; there was testimony that the plane could be landed safely in 500 feet; and, the distance from the point where the plane first touched down to where it stopped was approximately 300 feet.

The defendant was familiar with the airport, being a member of a flying club there, and was familiar with the Cessna 172, having trained for his pilot's license in a similar model.

. At the close of the plaintiff's evidence, the court allowed a motion for a directed verdict. From the judgment and from certain evidentiary rulings by the court, the plaintiff appealed.

*Powe, Porter, Alphin & Whichard, P.A. by James G. Billings for plaintiff appellant.*

*Vann & Vann by Arthur Vann for defendant appellee.*

HEDRICK, Judge.

From the judgment entered, it appears that the court found no evidence of actionable negligence on the part of the defendant and, in addition, found that the plaintiff's own negligence was the cause of the accident.

"The hiring or rental of aircraft constitutes a bailment contract . . . . " 2A C.J.S., Aeronautics and Aerospace, § 100. "While one who rents or hires an airplane from another is not, as bailee, an insurer thereof, he must exercise towards the aircraft the ordinary degree of care required by a reasonable person in the light of all the circumstances present at the time. He is bound to exercise elementary principles of safe flying . . . . (footnotes omitted) " 2A C.J.S., *id.*, § 105, p. 243; *accord, Jackson v. Stancil*, 253 N.C. 291, 116 S.E. 2d 817 (1960). "[R]*es ipsa loquitur* does not apply, 'it being common knowledge that aeroplanes .do fall without fault of the pilot.' Furthermore, there must be a causal connection between the negligence complained of and the injury inflicted. *Smith v. Whitley*, 223 N.C. 534, 27 S.E. 2d 442." *Jackson v. Stancil, supra* at 297.

[1] Plaintiff introduced evidence as to the customary and proper procedure for approaching and landing at Durham Skypark in a Cessna 172. Plaintiff also introduced evidence to the effect that defendant's approach and landing did not conform to the procedure outlined by the plaintiff's witness. Defendant was too high, not far enough out, traveling too fast, and had out insufficient flaps. In addition the defendant's "S" turns were shallow when the customary procedure would call for deep banking "S" turns to slow the plane. Instead of remaining aligned with the runway, defendant drifted off the landing path. He then landed at an angle, at a speed above the optimum for a Cessna 172, and at too flat an attitude when the customary procedure would be to pull the nose up.

While evidence of custom or general practice or optimum procedure is not conclusive on the necessary standard of care, deviation from such standards is evidence of negligence to be used by the jury in determining what the ordinary degree of care required of a reasonable person would be in the same circumstances. *See generally* 65A C.J.S., Negligence, § 232. When the evidence is considered in the light most favorable to the plaintiff, it will permit but not compel the jury to find that the defendant was negligent in approaching the Durham Skypark and landing the aircraft and that such negligence was a proximate cause of the damage complained of.

With respect to the negligence of the plaintiff, " . . . a directed verdict for the defendant . . . on the ground of contributory negligence should be granted when, and only when, the evidence, taken in the light most favorable to plaintiff, establishes the contributory negligence . . . so clearly that no other reasonable inference or conclusion may be drawn therefrom. Discrepancies and contradictions in the evidence, even though such occur in the evidence offered on behalf of plaintiff, are to be resolved by the jury, not by the court. *Stathopoulos v. Shook,* 251 N.C. 33, 36, 110 S.E. 2d 452, 455 (1959) and cases cited therein." *Bowen v. Constructors Equipment Rental Co.,* 283 N.C. 395, 405, 196 S.E. 2d 789, 797 (1973).

[2]   Defendant contends that the failure of the plaintiff to maintain the airport grounds adjacent to the runway but beyond the narrow mowed area outside the lights constituted contributory negligence as a matter of law. We do not agree. While there is evidence in the record from which the jury could find that plaintiff allowed the area off the runway to remain rough with high grass and holes, there is nothing in the record before us to raise an inference that the plaintiff violated any duty owed to the defendant with respect to its maintenance of that area. Hence, under the circumstances here presented, we are of the opinion that the evidence is not sufficient to raise an inference of contributory negligence with respect to maintenance of the area adjacent to the runway lights.

[3]   Defendant also contends that the radioed instructions were a direct interference with the safe landing of the aircraft. While there is some evidence from which the jury could find that the plaintiff was negligent, under the circumstances here presented, in undertaking to give any instructions to the defendant regarding the landing of the aircraft and in the instructions that were

given, and that such negligence was a proximate cause of the damage to the aircraft, we are of the opinion that the evidence raises an issue for the jury but does not establish the plaintiff's contributory negligence as a matter of law.

For the reasons stated, the judgment directing a verdict for defendant must be reversed and the cause remanded for a new trial.

From the disposition of the plaintiff's exceptions to the granting of the directed verdict, we find it unnecessary to discuss plaintiff's exceptions to the evidentiary rulings since they are unlikely to occur at a new trial.

Reversed.

Judges BRITT and MARTIN concur.