FLOYD MOORE v. FIELDCREST MILLS, INC.

No. 43

(Filed 5 February 1979)

1. **Carriers § 8.1— alleged negligence in loading of goods—failure to give warning —summary judgment**

    The trial court properly entered summary judgment for defendants in an action to recover for personal injuries received when several large bales of acrylic fiber loaded on a trailer by defendant shipper fell on plaintiff while he was marking the bales inside the trailer at defendant consignee's unloading dock where depositions offered by defendants, including one by plaintiff himself, established a lack of negligence on the part of both defendants, and plaintiff offered no opposing materials.

2. **Rules of Civil Procedure § 56.6— summary judgment—negligence cases**

    It is only in exceptional negligence cases that summary judgment is appropriate because the rule of the prudent man, or other applicable standard of care, must be applied, and ordinarily the jury should apply it under appropriate instructions from the court. Even so, where the motion for summary judgment is supported by evidentiary matter showing a lack of negligence on the part of the movants and there is no question as to the credibility of witnesses and no evidence is offered in opposition thereto, no issue is raised for the jury to consider under appropriate instructions.

Justice COPELAND dissenting.

Justice EXUM joins in the dissenting opinion.

PLAINTIFF appeals from decision of the Court of Appeals, 36 N.C. App. 350, 244 S.E. 2d 208 (1978), affirming judgment of *Gaines, J.*, entered 17 January 1977 in WILSON Superior Court.

Plaintiff brought this action to recover damages for personal injuries, alleging in pertinent part the following:

1. Plaintiff was injured on 5 May 1975 at a storage warehouse under the control of Fieldcrest Mills, Inc. (Fieldcrest) when several bales of acrylic fiber weighing approximately 500 pounds each fell on him.

2. The bales had been loaded by Monsanto Company (Monsanto) at its place of business in Decatur, Alabama. The trailer into which the cargo was loaded was sealed by Monsanto and the seal was intact when the trailer was turned over to Fieldcrest for unloading at the Fieldcrest storage warehouse in Greenville, Pitt County, North Carolina.

3. The trailer containing the bales of fiber was parked on an inclined concrete ramp at the storage warehouse, the rear of the trailer near or against the unloading dock and the floor of the trailer slightly lower than the level of the warehouse floor.

4. William Marvin Boyd, the employee of Fieldcrest who was responsible for unloading and storing the cargo in the warehouse, knew that other shippers of bales of the same or similar fiber loaded the bales with their length running with the length of the trailer; and further knew that where the length of the bales ran with the width of the trailer, as Monsanto had loaded these bales, the stacks of bales were unstable and would tumble over.

5. Without warning plaintiff of this hazard, the defendant Fieldcrest, through its employee William Marvin Boyd, "invited" plaintiff to mark Fieldcrest's code numbers on the bales in the trailer so Boyd would not have to do it and the unloading would be expedited.

6. Fieldcrest was negligent in that (a) it failed to provide plaintiff with a safe place to work, (b) it negligently failed to warn plaintiff of existing dangers known to it, (c) it negligently failed to provide reasonably safe premises, and (d) it negligently continued to receive from Monsanto materials improperly loaded.

7. The defendant Monsanto was negligent in that (a) it failed to exercise reasonable care in the loading of the cargo, (b) it failed to load the cargo in a manner reasonably safe for unloading, and (c) it allowed the cargo out of its possession and control when it knew or should have known the cargo to be dangerous because of its propensity to fall over and failed to give any warning or notice of such danger.

8. The negligence of each defendant was a proximate cause of plaintiff's injuries and damages.

9. As a result of being struck by the bales plaintiff suffered a fracture of his left clavicle, a fracture of his right acetabulum, a fracture of his right humerus and ilium and a contusion of his lung. Plaintiff had other injuries and was hospitalized for a long period of time, has been and is unable to work and alleges his injuries are permanent. He seeks $475,000 damages to cover his medical expenses, lost earnings, pain and suffering and permanent impairment of his health.

Each defendant denied the material allegations of the complaint, moved for dismissal under Rule 12 of the Rules of Civil Procedure for failure to state a claim upon which relief can be granted, pled contributory negligence of plaintiff and alleged that plaintiff voluntarily assumed the risk with full knowledge of the entire situation.

Pursuant to Rule 56, Rules of Civil Procedure, each defendant moved for summary judgment on the negligence issue raised by the pleadings and submitted the depositions of William M. Boyd and plaintiff Floyd Moore in support of the motions, contending the depositions showed no breach of any duty owed by either defendant to the plaintiff and further established that plaintiff's own negligence was a proximate cause of any injury he received. The contents of these depositions will more fully appear in the opinion.

Plaintiff filed no opposing affidavits or other evidentiary material permitted by Rule 56(c).

The trial court, being of the opinion that there was no genuine issue as to any material fact and that defendants were entitled to a judgment as a matter of law, allowed the motion of each defendant for summary judgment. The Court of Appeals affirmed with Martin, J., dissenting. Plaintiff thereupon appealed to the Supreme Court as of right pursuant to G.S. 7A-30(2).

*Narron, Holdford, Babb, Harrison & Rhodes, P.A., by William H. Holdford, attorneys for plaintiff appellant.*

*Young, Moore, Henderson & Alvis by R. Michael Strickland, attorneys for Fieldcrest Mills, Inc., defendant appellee.*

*Connor, Lee, Connor, Reece & Bunn by John M. Reece, attorneys for Monsanto Company, defendant appellee.*

HUSKINS, Justice.

Legal principles applicable to summary judgment are discussed in *Kessing v. Mortgage Corp.*, 278 N.C. 523, 180 S.E. 2d 823 (1971), and have been applied in many cases by this Court. Authoritative decisions, both state and federal, interpreting and applying Rule 56 hold that the party moving for summary judgment has the burden of "clearly establishing the lack of any

triable issue of fact by the record properly before the court. His papers are carefully scrutinized; and those of the opposing party are on the whole indulgently regarded." 6 Pt. 2 Moore's Federal Practice, § 56.15[8], at 642 (2d ed. 1976); *Singleton v. Stewart*, 280 N.C. 460, 186 S.E. 2d 400 (1972). "This burden may be carried by movant by proving that an essential element of the opposing party's claim is nonexistent or by showing through discovery that the opposing party cannot produce evidence to support an essential element of his claim. If the moving party meets this burden, the party who opposes the motion for summary judgment must either assume the burden of showing that a genuine issue of material fact for trial does exist or provide an excuse for not so doing." *Zimmerman v. Hogg & Allen*, 286 N.C. 24, 209 S.E. 2d 795 (1974).

The language of the rule itself conditions the rendition of summary judgment upon a showing by the movant that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. The court is not authorized by Rule 56 to decide an issue of fact. It is authorized to determine whether a genuine issue of fact exists. The purpose of summary judgment is to eliminate formal trials where only questions of law are involved by permitting penetration of an unfounded claim or defense in advance of trial and allowing summary disposition for either party when a fatal weakness in the claim or defense is exposed. *Caldwell v. Deese*, 288 N.C. 375, 218 S.E. 2d 379 (1975). "The device used is one whereby a party may in effect force his opponent to produce a forecast of evidence which he has available for presentation at trial to support his claim or defense. A party forces his opponent to give this forecast by moving for summary judgment. Moving involves giving a forecast of his own which is sufficient, if considered alone, to compel a verdict or finding in his favor on the claim or defense. In order to compel the opponent's forecast, the movant's forecast, considered alone, must be such as to establish his right to judgment as a matter of law." 2 McIntosh, N.C. Practice and Procedure, § 1660.5 (2d ed. Phillips Supp. 1970). "If there is any question as to the credibility of witnesses or the weight of evidence, a summary judgment should be denied. . . ." 3 Barron and Holtzoff, Federal Practice and Procedure, § 1234 (Wright ed. 1958).

We now determine the propriety of summary judgment for defendants in this case by applying these legal principles to the record properly before us.

Was plaintiff injured by the negligence of the defendants or either of them? This is the overriding issue of fact which plaintiff must establish at trial in order to prevail on his cause of action. To support their motions for summary judgment and establish the nonexistence of negligence on the part of either defendant, movants offered the depositions of William M. Boyd and plaintiff Floyd Moore.

Boyd stated in his deposition that it was his duty to unload the trailer; that he used a Clark tow-motor, squeeze type, to lift the bales and transport them from the trailer into the warehouse; that plaintiff Floyd Moore delivered the load of acrylic fiber bales on 5 May 1975 and backed the tractor-trailer into the ramp which slopes downward to the unloading dock; that when the vehicle came to rest the rear of the trailer was approximately level with the unloading dock but lower than the front end of the trailer due to the incline on which it rested; that the cargo consisted of Monsanto fiber in bales about three feet wide, three and one-half feet long, and weighing 490 to 525 pounds; that each bale was wrapped in a clear plastic fiber; that the trailer was sealed and the seal was broken immediately before the unloading began; that the Clark tow-motor had a guard rail over the top of the man operating it to protect him from bales that might fall off the tow-motor; that a view of the cargo after the seal was broken and the trailer opened revealed that the bales had been loaded "longways on one side of the trailer and the other side was crossways"; that the trailer was full from bottom to top, *i.e.*, each row was four bales high, and the length of the bales on one side was perpendicular to the length of the trailer while the length of the bales on the other side was parallel to the length of the trailer; that a Fieldcrest lot number was assigned to this cargo and the number had to be stamped or stenciled on each bale as it was unloaded and taken into the warehouse; that after deponent Boyd had unloaded five or six bales with the tow-motor and affixed the lot number on each bale himself, plaintiff Floyd Moore suggested that he would put the lot numbers on the bales to speed up the unloading process and entered the trailer for that purpose; that some of the bales fell on plaintiff while deponent Boyd was in the

warehouse; that deponent was not present when the bales fell and did not know what, if anything, plaintiff did to cause them to fall; that the rescue squad was summoned and Mr. Moore was taken to the hospital.

William M. Boyd further stated in his deposition that some companies load the bales with their length perpendicular to the sides of the trailer while others load the bales with the length of the bales parallel to the sides of the trailer — "some load it different ways"; that in his experience from working on the first shift the only shipper loading bales in the manner the 5 May 1975 shipment was loaded — *i.e.*, lengthwise on one side of the trailer, crosswise on the other — was Monsanto; that he didn't know how bales were loaded on the second and third shifts; that bales of acrylic fiber with the plastic exterior coating are a little slippery; that the occasion when plaintiff was injured on 5 May 1975 was the first time any bales had fallen at the warehouse; that plaintiff was in the trailer putting the lot numbers on the bales, or at least was in there for that purpose, when the bales fell on him — "the purpose of having Mr. Moore put the lot numbers on the bales was to speed up the unloading process, that was Mr. Moore's suggestion."

Plaintiff Floyd Moore in his deposition stated in pertinent part that he had worked for Thurston Motor Lines for 28-29 years; that he picked up the sealed trailer at Thurston Motor Lines in Wilson, took it to the Fieldcrest warehouse in Greenville, North Carolina, and backed it down the ramp to the unloading dock; that after the seal was broken he observed the way the bales were stacked and saw nothing unusual about it; that William M. Boyd, the Fieldcrest employee in charge of unloading the trailer, handed him a stencil pencil and said "if you'll mark those bales for me, it'll probably rush up unloading"; that he walked into the trailer for that purpose and started marking the bales that were lengthwise along the right side; that he had marked two or three bales loaded parallel to the length of the trailer when several bales fell on him and he could not say whether the bales that fell "were lengthways bales or crossways bales"; that he could not say which stack of bales fell; that he noticed nothing unusual about the tow-motor going in and out or in the amount of vibration caused by the tow-motor; that he did not see any bales out of line with each other; that he noticed

nothing unusual "about the position of any bale as far as its align-
ment with the bales above it or below it . . . . I do not know what
caused the bales to fall. . . . I have seen this type of cargo before.
I'd seen it before at Fieldcrest Mills. I had delivered this type of
bales to Fieldcrest on prior occasions a couple of times I know.
. . . I was asked to put numbers on the bales. . . . It was not part
of my regular job to unload bales of this type"; that the bales in
this trailer were stacked some lengthwise and some crosswise;
that "I have seen other trucks with other bales in it loaded all
lengthwise, I've seen them with all lengthwise and I've seen them
loaded both ways. I've seen them all loaded the long ways in a
trailer and I've seen them all loaded crossways in a trailer."

[1] When the two depositions offered by defendants in support
of their motions for summary judgment are viewed in the light
most favorable to plaintiff, the "evidentiary forecast" offered by
defendants is such that, if offered by plaintiff at the trial, without
more, would compel a directed verdict in defendants' favor. The
two depositions, one by plaintiff himself, establish a lack of
negligence on the part of either defendant and entitle both de-
fendants to judgment as a matter of law unless forestalled by a
forecast of evidence by plaintiff sufficient to counter the effect of
the two depositions by showing some negligent act on the part of
one or both defendants proximately causing plaintiff's injury.
Plaintiff offered nothing—no counter-affidavits, admissions in
pleadings, depositions, answers to interrogatories, or any other
evidentiary materials permitted by Rule 56(c). In that factual con-
text we are constrained to hold that the supporting evidence of-
fered by defendants establishes that there is no genuine issue as
to any material fact and that defendants are entitled to a judg-
ment as a matter of law. *Kessing v. Mortgage Corp., supra;
Caldwell v. Deese, supra; Zimmerman v. Hogg & Allen, supra;
Page v. Sloan,* 281 N.C. 697, 190 S.E. 2d 189 (1972); *Koontz v. City
of Winston-Salem,* 280 N.C. 513, 186 S.E. 2d 897 (1972).

[2] As a general proposition, issues of negligence are ordinarily
not susceptible of summary adjudication either for or against the
claimant "but should be resolved by trial in the ordinary
manner." 6 Pt. 2 Moore's Federal Practice, § 56.17[42] at 946 (2d
ed. 1976). Hence it is only in exceptional negligence cases that
summary judgment is appropriate because the rule of the prudent
man, or other applicable standard of care, must be applied, and

ordinarily the jury should apply it under appropriate instructions from the court. *Caldwell v. Deese, supra;* Gordon, The New Summary Judgment Rule in North Carolina, 5 Wake Forest Intra. L. Rev. 87 (1969). Even so, where, as here, the motion for summary judgment is supported by evidentiary matter showing a lack of negligence on the part of the movants and there is no question as to the credibility of witnesses and no evidence is offered in opposition thereto, no issue is raised for the jury to consider under appropriate instructions. *See* 6 Pt. 2 Moore's Federal Practice, § 56.17[42] at 948-49 (2d ed. 1976). The result is summary judgment for the movants.

The decision of the Court of Appeals upholding summary judgment for defendants is

Affirmed.

Justice COPELAND dissenting.

In his complaint the plaintiff alleged, *inter alia*, that the bales of fiber were negligently loaded by Monsanto Company. He claimed that other companies loaded similar bales with the length running with the length of the trailer whereas the shipment in question was loaded with the length of some of the bales running with the width of the trailer. When loaded this unusual way, plaintiff claimed "the stacks of bales were unstable and would tumble over."

William Boyd had been employed by Fieldcrest Mills for twenty-four years. His job primarily entailed spotting and unloading tractor-trailers, and he received all the shipments coming to Fieldcrest Mills on the day shift. He testified by deposition that "[i]n my experience the only carrier loading bales in the manner that these bales in the May 5, 1975 shipment from Monsanto were loaded was Monsanto."

Considering the length of time Mr. Boyd had been dealing with such shipments, surely his testimony is evidence that the bales in question were loaded in a manner contrary to ordinary custom and usage. Although deviation from custom is not controlling, it constitutes some evidence of negligence. *See Woodall Flying Service, Inc. v. Thomas*, 27 N.C. App. 107, 218 S.E. 2d 203

In re Sarvis

(1975). *See also* W. PROSSER, TORTS § 33 (4th ed. 1971); 57 Am. Jur. *Negligence* §§ 77 *et seq.* (1971) and cases cited therein.

The defendants moved for summary judgment in this case; therefore, the burden is on them to show that there is no genuine issue as to a material fact and that they are not negligent as a matter of law. They did not meet this burden.

The testimony of Mr. Boyd constituted some evidence of the defendants' negligence. They brought forth no evidence at all that the unusual method used in loading this shipment of heavy bales was reasonably safe. Thus, defendants did not meet their initial burden. If such evidence had been presented, perhaps the plaintiff would then have had to come forth with evidence to the contrary in order to show that there was a genuine issue for trial. The trial court's grant of summary judgment for the defendants was improper in this case. For this reason, I would reverse the decision of the Court of Appeals.

Justice EXUM joins in this dissent.