MELVIN G. JOHNSON AND WIFE, AUDREY VIRGINIA JOHNSON v. BEVER-
LY-HANKS & ASSOCIATES, INC., HILL-GATEWOOD REALTY, INC.,
JAMES H. GORDON, JOHN R. KEFGEN AND WIFE, DOROTHY E. KEFGEN,
ORKIN EXTERMINATING COMPANY, INC., THOMAS W. SUMNER,
DONALD O. THOMPSON, AND WYNELLE M. THOMPSON

No. 8929SC162

(Filed 20 February 1990)

1. Rules of Civil Procedure § 15.1 (NCI3d) — motion to amend
pleadings — denied — no abuse of discretion

The trial court did not abuse its discretion by denying
plaintiffs' motion to amend the pleadings where the complaint
was filed on 1 September 1987, the motion to amend was
made on 18 April 1988, and there was nothing in the record
to indicate why plaintiffs were delayed in making the motion
or that the trial court abused its discretion.

Am Jur 2d, Pleading § 310.

2. Fraud § 12.1 (NCI3d) — sale of house — false representations
of material facts — evidence not sufficient

The trial court properly granted summary judgment for
defendants Wynelle Thompson (the selling realtor) and Beverly-
Hanks (Thompson's agency) in an action for fraud arising from
the sale of a house where plaintiffs did not produce evidence
of false representations as to a material past or existing fact.

Am Jur 2d, Brokers § 108.

3. Unfair Competition § 1 (NCI3d) — sale of house — unfair or
deceptive trade practice — evidence insufficient

The trial court properly granted summary judgment for
defendants Thompson and Beverly-Hanks in an action for un-
fair or deceptive trade practices under N.C.G.S. § 75-1.1 arising
from the sale of a house where the forecast of evidence does
not reveal any oppressive, unscrupulous, or deceptive conduct
on the part of Wynelle Thompson or any representative of
Beverly-Hanks.

Am Jur 2d, Brokers § 108.

4. Conspiracy § 2.1 (NCI3d) — sale of house — evidence insufficient

The trial court properly granted summary judgment for
defendants Thompson and Beverly-Hanks on a civil conspiracy

claim arising from the sale of a house where plaintiffs presented no evidence of any agreement between Ms. Thompson and any other defendant.

**Am Jur 2d, Brokers § 108.**

5. **Fraud § 12.1 (NCI3d); Unfair Competition § 1 (NCI3d); Conspiracy § 2.1 (NCI3d)— sale of house — structural damage — summary judgment for defendants — no error**

The trial court did not err in an action arising from the sale of a house by granting summary judgment for defendants Hill-Gatewood (the listing real estate agency) and Sumner (the listing agent) on claims for fraud, unfair or deceptive trade practices, or civil conspiracy where very few representations were made by Sumner or any representative of Hill-Gatewood to plaintiffs; the few representations which they made were not relied upon by plaintiffs; and the forecast of evidence did not reveal any agreement by Sumner or any representative of Hill-Gatewood to do anything unlawful with regard to plaintiffs.

**Am Jur 2d, Brokers § 108.**

6. **Unfair Competition § 1 (NCI3d); Fraud § 12.1 (NCI3d); Conspiracy § 2.1 (NCI3d)— sale of house — structural damage — summary judgment for seller — no error**

The trial court did not err by granting summary judgment for defendant Kefgen in an action for fraud, unfair or deceptive trade practices, and civil conspiracy arising from the sale of Kefgen's house where plaintiffs did not bring forth any fact which tends to show that the Kefgens knowingly made false representations; there was no evidence of any agreement between the Kefgens and any other defendant to participate in an illegal act; and Mrs. Kefgen was merely a homeowner who listed her house for sale and cannot be liable for any acts which might generally be considered unfair or deceptive trade practices.

**Am Jur 2d, Fraud and Deceit §§ 9, 41, 105, 106, 108; Vendor and Purchaser §§ 488, 495.**

7. **Conspiracy § 2.1 (NCI3d); Fraud § 12.1 (NCI3d); Unfair Competition § 1 (NCI3d)— sale of house—termite inspector—dismissal proper**

The trial court did not err by granting defendant Orkin's motion for dismissal under N.C.G.S. § 1A-1, Rule 12(b)(6) in an action for fraud, unfair or deceptive trade practices, or civil conspiracy arising from the sale of a house where plaintiffs failed to put forth any evidence to support those claims in that Orkin's inspection reports were mere opinions.

**Am Jur 2d, Negligence § 127; Vendor and Purchaser § 64.**

8. **Fraud § 12.1 (NCI3d); Unfair Competition § 1 (NCI3d); Conspiracy § 2.1 (NCI3d)— sale of house—structural damage—summary judgment for home inspector—no error**

The trial court properly granted summary judgment for defendant Gordon (home inspector) on claims of fraud, unfair or deceptive trade practices and civil conspiracy arising from the sale of a house where defendant Gordon's only representations were those placed in his inspection report; plaintiffs neither proved that those claims were false nor alleged a claim for negligent misrepresentation, so that a prima facie case of fraud was not established; the evidence was insufficient to support an allegation of unfair or deceptive trade practices; and the evidence did not reveal that defendant Gordon knew of a potential conspiracy, joined in through agreement, acted in a manner to further the conspiracy, or committed an unlawful act.

**Am Jur 2d, Negligence § 127; Vendor and Purchaser § 64.**

9. **Fraud § 12.1 (NCI3d); Unfair Competition § 1 (NCI3d); Conspiracy § 2.1 (NCI3d)— sale of house—structural damage—builder—summary judgment appropriate**

The trial court did not err by granting summary judgment for defendant Donald Thompson (builder) in an action for fraud, unfair or deceptive trade practices or conspiracy arising from the sale of a house where the evidence showed that Thompson built the residence and submitted a letter attesting to the settling of the house and to its general soundness, but no facts were presented to show wrongful conduct, unfair or deceptive trade practices, or an agreement to engage in an unlawful act.

**Am Jur 2d, Fraud and Deceit §§ 9, 41, 105, 106, 108.**

Judge GREENE dissenting in part and concurring in part.

APPEAL by plaintiffs from judgments entered 12 July 1988, 14 September 1988, 15 September 1988 and 25 September 1988 by *Judge Robert D. Lewis* in HENDERSON County Superior Court. Heard in the Court of Appeals on 14 September 1989.

This is a civil action in which plaintiffs sought compensatory and punitive damages for defendants' alleged fraud, unfair or deceptive acts or practices in or affecting commerce and civil conspiracy.

*James C. Coleman for plaintiff-appellants.*

*Womble Carlyle Sandridge & Rice, by James R. Morgan, Jr., for defendant-appellees Beverly-Hanks & Associates, Inc. and Wynelle M. Thompson.*

*Robert G. McClure, Jr. and Frank J. Contrivo for defendant-appellees Thomas W. Sumner and Hill-Gatewood Realty, Inc.*

*Waymon L. Morris for defendant-appellee James H. Gordon.*

*Prince, Youngblood, Massagee & Jackson, by Boyd B. Massagee, Jr. and Sharon B. Ellis, for defendant-appellee Dorothy E. Kefgen.*

*Prince, Youngblood, Massagee & Jackson, by Kenneth Youngblood and Sharon B. Ellis, for defendant-appellee Donald O. Thompson.*

*Long, Parker, Hunt, Payne & Warren, P.A., by Jeffrey P. Hunt, for defendant-appellee Orkin Exterminating Company, Inc.*

JOHNSON, Judge.

The pertinent facts of this case are as follows: John and Dorothy Kefgen signed a listing contract to list their home in Henderson, North Carolina and to place the listing in the Hendersonville Multiple Listing Service. The listing firm was Hill-Gatewood Realty, Inc. and the listing agent was Thomas A. Sumner. Plaintiffs, Melvin and Audrey Johnson, were shown the house by Wynelle M. Thompson, a real estate broker at Beverly-Hanks and Associates, Inc., and signed an offer to purchase on 18 April 1986.

On 20 April 1986, plaintiffs returned to the Kefgen house for a closer inspection. While touring the house, plaintiffs noticed peeling paint, moisture coming through the wall, bad cracks and a

bulge in the rear wall of the house. Wynelle Thompson was subsequently informed of the defects and indicated that she would have the builder inspect the home.

Following the inspection by Donald Thompson, Wynelle Thompson informed plaintiffs that: (1) there were no structural defects; (2) the bulge in the wall was the result of settling; (3) a termite inspection would be conducted prior to closing; and (4) a door to the crawl space under the house had been installed as well as three vents.

A termite inspection of the house was conducted by Orkin Exterminating Company on 16 July 1986 and 26 July 1986. The report from the second inspection stated that there was "not structural damage" with the house, although there had been some problems with termites. The report further stated that the house was structurally sound.

In spite of the defects discovered by plaintiffs, they went to the real estate closing on 5 August 1986. At the closing, they were given the following signed statements:

(1) A statement signed by Orkin indicating that there was no structural damage in the house caused by termites.

(2) A statement by Wynelle Thompson indicating there were no structural defects and that the house was sound.

(3) A letter from James H. Gordon who signed as Jim Gordon of the Carolina Home Inspection Service indicating that there was no structural damage to the house.

(4) A memorandum signed by Donald O. Thompson, builder of the house, indicating that the concrete slab in the basement was sound. Donald O. Thompson further indicated that the concrete slab in the basement had settled somewhat, that after six years it had done all the settling it was going to do and that the house was soundly built.

(5) A letter from James E. Creekman, Attorney At Law, who indicated he represented Mr. and Mrs. Kefgen. He presented with his letter another statement from Donald O. Thompson stating that the structural integrity of the house was good and that the wooden forms under the concrete slab in the basement had nothing to do with the structural integrity.

Plaintiffs purchased the house on 5 August 1986 and shortly thereafter moved in.

After moving into the house, plaintiffs consulted and retained the services of the engineering firm of Sutton-Kennerly and Associates. Mr. Bernard M. Feinberg, P.E., inspected the premises and concluded that the house was not safe for occupancy due to the following reasons:

(1) Portions of the basement foundation walls were unstable and could collapse with little or no warning.

(2) A concrete masonry wall beneath the left rear garage door was found to be bearing on earth instead of a concrete foundation.

(3) The basement slab was found to be spanning distances greater than those recommended for a four inch thick concrete slab based on deflection criteria.

(4) Cracking and deflected surface conditions noted in the asphalt paving indicate settlement of the lowgrade adjacent to the home.

(5) Steel (jack post) type columns which support the upper level of the residence were found not to be secured to the basement floor.

(6) Upper level wood floor joists were found to be bearing unsecured atop the concrete masonry unit walls and no wood plate or anchor bolts were found.

(7) The basement slab is spanning a much greater distance than that allowed under the North Carolina Uniform Residential Code. Since the center steel columns support a portion of the upper floor and possibly fifty percent (50%) of the roof, partial structural failure of this floor could result in a collapse of the home.

(8) It appears as if the residence may have slid partially off its foundation while it was being constructed and was pulled back into place.

(9) The basement crawl space is not adequately ventilated to prevent moisture problems.

Upon receiving an estimate that it would cost approximately $69,427.00 to repair the structural damages, plaintiffs contacted

JOHNSON v. BEVERLY-HANKS & ASSOC.

[97 N.C. App. 335 (1990)]

all parties involved in this matter to see if each would contribute to the repairs. None of the parties responded and plaintiffs filed this complaint.

Plaintiffs have essentially brought forth two Assignments of Error with respect to each defendant. The questions for review by this Court relate to whether the trial court abused its discretion in denying plaintiffs' motion for leave to amend the complaint and whether the trial court erred in granting all defendants' motions for summary judgment. Inasmuch as there are eight defendants and six appeals, we will first address the denial of plaintiffs' motion for leave to amend the complaint. We then will discuss the issue of summary judgment as it relates to each defendant.

[1] A motion to amend the pleadings, after the expiration of the statutory time for amending the pleadings as a matter of course, is addressed to the sound discretion of the trial judge. The denial of such motion is not reviewable on appeal absent a clear showing of abuse of discretion. *Caldwell's Well Drilling, Inc. v. Moore*, 79 N.C. App. 730, 340 S.E.2d 518 (1986). The trial court, in its broad discretion, can permit or deny amendments after the time for amending as a matter of law has expired. *Banner v. Banner*, 86 N.C. App. 397, 358 S.E.2d 110 (1987).

In the case *sub judice*, the complaint was filed on 1 September 1987 and the motion to amend was made on 18 April 1988. There is no showing that the trial court abused its discretion in denying plaintiffs' motion to amend the complaint. There is also nothing in the record to indicate why plaintiffs were delayed in making this motion. This assignment is overruled.

We note at the outset of Assignment of Error numbered two that plaintiffs' appeal against all defendants is premised upon the same three theories of recovery. The applicable rules of law do not differ with respect to each defendant and, therefore, an extensive discussion of these rules, initially, will govern the analysis thereafter.

The party who moves for summary judgment must initially prove that there are no disputed factual issues and that the party is entitled to judgment as a matter of law. *Moore v. Fieldcrest Mills, Inc.*, 296 N.C. 467, 251 S.E.2d 419 (1979). Once the moving party has met this initial burden, the non-moving party must prove

the existence of a genuine issue of material fact or, in the alternative, provide an excuse for not doing so. *Id.*

## Appeal No. 1

### Beverly-Hanks & Associates, Inc. (Beverly-Hanks) and Wynelle M. Thompson

[2]   In this appeal, plaintiffs' sole contention is that the trial court erred in granting defendants' motions for summary judgment. We disagree.

Plaintiffs' complaint sought three claims for relief: (1) fraud; (2) unfair or deceptive trade practices; and (3) civil conspiracy.

To make out an actionable case of fraud, plaintiffs must establish that there existed a

(1) [f]alse representation or concealment of a material fact, (2) reasonably calculated to deceive; (3) made with the intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party.

*Ragsdale v. Kennedy*, 286 N.C. 130, 138, 209 S.E.2d 494, 500 (1974). Here, plaintiffs have not produced any evidence that defendant, Wynelle Thompson, or any representative of defendant, Beverly-Hanks, made any false representations as to a material past or existing fact. As such, the trial court properly granted defendants' motions for summary judgment as to the fraud allegation.

[3]   Plaintiffs' second claim for relief is based upon unfair or deceptive trade practices. G.S. sec. 75-1.1.

As a general principle, "[a] practice is unfair when it offends established public policy as well as when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *Johnson v. Phoenix Mutual Life Ins. Co.*, 300 N.C. 247, 263, 266 S.E.2d 610, 621 (1980), *rev'd on other grounds*, 323 N.C. 559, 374 S.E.2d 385 (1988). A party has committed an unfair or deceptive act if he engages in conduct that results in an inequitable assertion of his power or position. *Id.* at 264, 266 S.E.2d at 622.

The forecast of the evidence does not reveal any oppressive, unscrupulous, or deceptive conduct on the part of Wynelle Thompson or any representative of Beverly-Hanks. The trial court, therefore, properly granted defendants' motion for summary judg-

ment with respect to the unfair or deceptive trade practices allegation.

[4] Plaintiffs' third claim for relief is based upon civil conspiracy.

Although plaintiffs have labeled their action as one for "civil conspiracy," there is actually no such cause of action. Our Supreme Court has stated:

> [a]ccurately speaking, there is no such thing as a civil action for conspiracy. The action is for damages caused by acts committed pursuant to a formed conspiracy, rather than by the conspiracy itself; and unless something is actually done by one or more of the conspirators which results in damage, no civil action lies against anyone. The gist of the civil action for conspiracy is the act or acts committed in pursuance thereof—the damage—not the conspiracy or the combination. The combination may be of no consequence except as bearing upon rules of evidence or the persons liable.

*Reid v. Holden*, 242 N.C. 408, 414-15, 88 S.E.2d 125, 130 (1955) (*quoting* 11 Am.Jur., *Conspiracy*, sec. 45).

A claim for relief resulting from a conspiracy exists if there is "an agreement between two or more persons to do an unlawful act or to do a lawful act in an unlawful way, and, as a result of acts done in furtherance of, and pursuant to, the agreement, damage occurs to the plaintiff." *Fox v. Wilson*, 85 N.C. App. 292, 354 S.E.2d 737, 743 (1987). In such a case, the conspirators are to be held jointly and severally liable for the act done in furtherance of the agreement. *Id.* Evidence of the agreement must, in fact, be sufficient to create more than a suspicion or conjecture in order to justify submission of the issue to a jury. *Cameron v. New Hanover Memorial Hospital*, 58 N.C. App. 414, 293 S.E.2d 901 (1982).

In the present case, plaintiffs alleged that Wynelle Thompson and all other defendants agreed to cover up the defects in the house. They also alleged that as a result of this conspiracy, they were damaged. Plaintiffs have presented absolutely no evidence of any agreement between Ms. Thompson and any other defendant. The trial court correctly granted Wynelle Thompson and Beverly-Hanks summary judgment as to the plaintiffs' "civil conspiracy" claim.

## Appeal No. 2

### Hill-Gatewood Realty, Inc. ("Hill-Gatewood") and Thomas W. Sumner

[5] The evidence presented to the trial court indicated that very few representations were made by Thomas Sumner or any representative of Hill-Gatewood to plaintiffs. The evidence further indicated that the few representations that they in fact made were not relied upon by plaintiffs in deciding whether or not to close the transaction. Furthermore, the forecast of the evidence does not reveal any agreement by Thomas Sumner or any representative of Hill-Gatewood to do anything unlawful with regard to plaintiffs.

The trial court had ample support for its conclusions that the conduct of the defendants was not oppressive, unscrupulous or deceptive. Summary judgment for defendants was properly entered on all three counts.

## Appeal No. 3

### Dorothy E. Kefgen

[6] As a matter of clarity, this Court notes that plaintiffs initially brought a cause of action for fraud, unfair or deceptive trade practices and civil conspiracy against John and Dorothy Kefgen. Due to John Kefgen's death, his wife, Dorothy, defends this action.

Plaintiffs bear the burden of proving *all* elements of a cause of action. The record indicates that Dorothy Kefgen and her husband placed their house up for sale some time prior to 18 April 1986. The record further indicates that the Kefgens were present on 20 April 1986 when plaintiffs returned to the house and made inquiries as to specific defects.

Plaintiffs allege that the Kefgens committed fraud and engaged in a conspiracy to cover up the defects. They, however, have neither brought forth any fact which tends to show the Kefgens knowingly made false representations nor any evidence of any agreement between the Kefgens and any other defendant to participate in an unlawful act.

Plaintiffs next alleged a claim for relief based upon G.S. sec. 75-1.1. This statute regulates unfair and deceptive trade practices. To be accountable to any party for violating G.S. sec. 75-1.1, a defendant must be engaged in commerce. Homeowners are "private parties engaged in the sale of [a] residence [and are] not involved

in trade or commerce and cannot be held liable under the statute." *Robertson v. Boyd*, 88 N.C. App. 437, 443, 363 S.E.2d 672, 676 (1988).

The undisputed facts establish that Mrs. Kefgen was merely a homeowner who listed her house for sale. Based upon this, Mrs. Kefgen cannot be liable for any acts which might generally be considered unfair or deceptive trade practices.

The trial court properly granted Dorothy Kefgen's motion for summary judgment as to the fraud, unfair or deceptive trade practices and "civil conspiracy" claims.

### Appeal No. 4

### Orkin Exterminating Company, Inc. ("Orkin")

[7] In this appeal, plaintiffs contend that: (1) the termite inspection forms prepared by Orkin on 16 July 1986 and 26 July 1986 were clearly designed to mislead them; (2) the report of 26 July specifically stated that there was no structural damage; and (3) the trial court erred in granting Orkin's Rule 12(b)(6) and summary judgment motions. We disagree.

Our Supreme Court has held that statements of opinion are insufficient in terms of defining representations which constitute fraud. *Myers & Chapman, Inc. v. Thomas G. Evans*, 323 N.C. 559, 374 S.E.2d 385 (1988). Turning to the facts at hand with this principle in mind, the plaintiffs were placed on notice of "possible hidden [termite] damages" as well as the possible need for a damage evaluation by a qualified expert. The inspection reports undisputedly disclaimed all warranties as to the absence of wood destroying insects. Furthermore, a reading of the reports allows this Court to extract another unambiguous form disclaimer. Item 11, Part C of the Orkin report clearly provides that "[t]his is not a structural damage report."

We are satisfied with the trial court's apparent interpretation that such statements made by Orkin were mere opinions and therefore were not actionable as fraud.

In reviewing the record, we find that the trial court did not err in granting Orkin's 12(b)(6) motion to dismiss with respect to plaintiffs' claims of unfair or deceptive trade practices or "civil conspiracy." Plaintiffs have simply failed to put forth any evidence to support these claims.

## Appeal No. 5

## James H. Gordon

[8] The forecast of the evidence revealed that James Gordon inspected designated areas of the house in question and based upon this inspection, submitted the following recommendations: (1) that an enclosed and unventilated crawl space area be opened; (2) certain deteriorated and rotten support structures for the overhead cement basement floor be removed; and (3) that the area be treated for termites. Defendant Gordon's only representations were those placed in his inspection report. Plaintiffs have neither proven these representations were false nor alleged a claim of negligent inspection. Therefore, a *prima facie* case for fraud has not been established.

Though the record was voluminous, the trial court was unable to find any representations or omissions made by James Gordon that rose to the level of oppressive, unscrupulous or deceptive conduct. The evidence presented is insufficient to support an allegation of unfair or deceptive trade practices.

Lastly, the evidence does not reveal that James Gordon knew of a potential conspiracy; joined in through agreement; acted in a manner which would further the conspiracy; or committed an unlawful act. Thus, this claim for relief has no merit.

The trial court carefully considered James Gordon's motion for summary judgment and properly concluded that no triable issues of fact existed on plaintiffs' claims of fraud, unfair or deceptive trade practices or "civil conspiracy."

## Appeal No. 6

## Donald O. Thompson

[9] The undisputed facts provide that Donald Thompson built the residence which plaintiffs complain of and submitted a letter attesting to the settling of the house and to its general soundness. No facts were presented to show wrongful conduct, unfair or deceptive trade practices or an agreement to engage in an unlawful act. Thus, plaintiffs have failed to establish that there exists a genuine issue of material fact with respect to their claims of fraud, unfair or deceptive trade practices and "civil conspiracy."

In light of these facts, the trial court properly granted defendant's motion for summary judgment on all three counts.

JOHNSON v. BEVERLY-HANKS & ASSOC.

[97 N.C. App. 335 (1990)]

Plaintiffs have failed to present any argument to support the contention that the trial court committed reversible error in the manner in which it conducted the summary judgment hearing. We therefore deem this argument abandoned and do not address it. Rule 28(b)(5), N.C. Rules App. Proc.; *Iverson v. TM One, Inc.*, 92 N.C. App. 161, 374 S.E.2d 160 (1988).

The result is as follows:

Plaintiffs' appeal against Beverly-Hanks & Associates, Inc. and Wynelle M. Thompson—Affirmed on all three counts.

Plaintiffs' appeal against Hill-Gatewood Realty, Inc. and Thomas W. Sumner—Affirmed on all three counts.

Plaintiffs' appeal against Dorothy E. Kefgen—Affirmed on all three counts.

Plaintiffs' appeal against Orkin Exterminating Company, Inc.—Affirmed on all three counts.

Plaintiffs' appeal against James H. Gordon—Affirmed on all three counts.

Plaintiffs' appeal against Donald O. Thompson—Affirmed on all three counts.

Affirmed.

Judge EAGLES concurs.

Judge GREENE concurs in part and dissents in part.

Judge GREENE concurring in part and dissenting in part.

While I agree with the majority in affirming the trial court on most of the issues presented, I believe the trial court erred in granting summary judgment for Beverly-Hanks & Associates, Inc., Wynelle M. Thompson, and Donald O. Thompson on both the fraud and unfair trade practices claims, and for Dorothy E. Kefgen on the fraud claim.

JOHNSON v. BEVERLY-HANKS & ASSOC.

[97 N.C. App. 335 (1990)]

I

## BEVERLY-HANKS & ASSOCIATES, INC. and WYNELLE M. THOMPSON

The majority conclude that "plaintiffs have not produced any evidence that defendant Wynelle Thompson or any representative of defendant Beverly-Hanks, made any false representation as to a material past or existing fact." The plaintiffs, in their verified complaint, allege factual bases for an action of fraud arguing that Wynelle M. Thompson and, derivatively, Beverly-Hanks fraudulently misled the plaintiffs into purchasing the property in issue.

> A broker who makes fraudulent misrepresentations or who conceals a material fact when there is a duty to speak to a prospective purchaser in connection with the sale of the principal's property is personally liable to the purchaser notwithstanding that the broker was acting in the capacity of agent for the seller.

J. Webster, *Real Estate Law in North Carolina* § 132, at 165 (3d ed. 1988) (footnote omitted).

Plaintiffs' evidence showed that Ms. Thompson hired Jim Gordon to conduct an inspection to satisfy the plaintiffs' demand for an independent investigation of the house's structural integrity. Ms. Thompson failed to mention that Mr. Gordon had earlier inspected the house for the Kefgens at the behest of Thomas Sumner, with whom Ms. Thompson now acted in concert in marketing the house on behalf of the Kefgens. By the evidence presented, Jim Gordon arguably does not qualify as a neutral, independent inspector, yet the plaintiffs relied on Ms. Thompson's choosing him as an independent inspector. The plaintiffs provided evidence that they would not have gone through with closing had they known they had not received an independent investigation. The evidence elicited during discovery and presented for the trial court's review upon the motion of summary judgment is thus conflicting as to material facts. Wynelle Thompson produced evidence to the effect that she did not know Jim Gordon had previously inspected the house for the Kefgens, and the plaintiffs produced evidence tending to show that not only was she aware of it, but that she sought Jim Gordon's services because of it. As these defendants have not shown that they otherwise were entitled to judgment as a matter of law, summary judgment was improperly granted.

Similarly I find in the record conflicting evidence as to the unfair trade practices claim against Wynelle Thompson and Beverly-Hanks. The evidence outlined above relating to the fraud claim could also tend to prove that Ms. Thompson engaged in a deceptive act or practice in or affecting commerce. *Powell v. Wold*, 88 N.C. App. 61, 68, 362 S.E.2d 796, 800 (1987) (proof of fraud necessarily constitutes a violation of the prohibition against unfair and deceptive trade practices). Thus, summary judgment was improvidently granted as to defendants Wynelle Thompson and Beverly-Hanks on this issue. *See Powell*, 88 N.C. App. 61, 362 S.E.2d 796 (motion to dismiss denied as to both realtor and real estate company where realtor made deceptive statements).

## II

### DOROTHY E. KEFGEN

Regarding defendant Dorothy E. Kefgen, I find that the plaintiffs presented sufficient evidence to withstand defendants' summary judgment motion since this defendant can be liable for the alleged fraud of her agent, Wynelle Thompson.

> A seller of property, as principal, is responsible to a purchaser for injuries caused by the fraud of the seller's broker committed during the existence of the agency and within the scope of the agent's actual or apparent authority from the seller. This is true even though the seller did not have knowledge of or authorize the actions of the broker. A seller will be precluded from enforcing a contract to convey against purchaser who has entered into the contract in justifiable reliance on the fraudulent, negligent or innocent material misrepresentations of the seller's agent.

J. Webster, *Real Estate Law in North Carolina* § 133, at 166. Also, the plaintiffs produced some evidence of misrepresentations by Ms. Kefgen and her husband directly to them about the soundness of the house. The plaintiffs provided evidence that tended to prove that when the plaintiffs inquired as to the cause of certain observed defects, the Kefgens provided incomplete and misleading answers. The plaintiffs testified this induced them to forego inquiries they would otherwise have made, thus presenting an additional ground for fraud. *See Blackwell v. Dorosko*, 93 N.C. App. 310, 377 S.E.2d 814, *opinion withdrawn in part on rehearing*, 95 N.C. App. 637, 383 S.E.2d 670 (1989).

Ms. Kefgen also argues that the plaintiffs had no unfair trade practices action under N.C.G.S. § 75-1.1 since she was only an individual selling her home. The same evidence which gave rise to her liability for fraud may also support an action under the Unfair Trade Practices Act. *Powell*, 88 N.C. App. at 68, 362 S.E.2d at 800. I fail to see the logic of excusing a homeowner-seller from the application of § 75-1.1 simply because the owner-seller does not earn a living by selling homes. N.C.G.S. § 75-1.1 declares unlawful "unfair or deceptive acts or practices in or affecting commerce . . . ." Commerce "includes all business activities, however denominated. . . ." N.C.G.S. § 75-1.1(b). Some of the many definitions of "business" include:

> an activity engaged in as normal, logical, or inevitable and usually extending over a considerable period of time; . . . an activity engaged in toward an immediate specific end and usually extending over a limited period of time; . . . a usually commercial or mercantile activity customarily engaged in as a means of livelihood . . . ; [or] transactions, dealings, or intercourse of any nature but now especially economic (as buying and selling) . . .

Webster's Third New International Dictionary (1968).

The statutory definition of commerce does not indicate with certainty whether the Legislature had an expansive or restrictive definition of business in mind, but the phrase "however denominated" connotes an expansive approach. However, as the majority opinion points out, our courts have interpreted the statute restrictively, holding that homeowners "engaged in the sale of [their] residence [are] not involved in trade or commerce . . . ." *Robertson v. Boyd*, 88 N.C. App. 437, 443, 363 S.E.2d 672, 676 (1988). *Robertson* depended on *Rosenthal v. Perkins*, 42 N.C. App. 449, 257 S.E.2d 63 (1979), which also held that a homeowner-seller was not subject to liability under N.C.G.S. § 75-1.1. To come to this conclusion the *Rosenthal* court looked to the purpose of the original version of the Unfair Trade Practices Act there enunciated as follows:

> (b) The purpose of this section is to declare, and to provide civil legal means to maintain, ethical standards of dealing between persons engaged in business and between persons engaged in business and the consuming public within this State,

to the end that good faith and fair dealings between buyers and sellers at all levels of commerce be had in this State.

N.C.G.S. § 75-1.1(b) (1975).

The Legislature has eliminated this language from the statute, but at the time it was in force, no doubt a restrictive definition of commerce was the legislative intent. Now, however, *Rosenthal* is no longer binding precedent given the substantial change in the statutory language, which currently states that: " 'commerce' includes all business activities, however denominated, but does not include professional services rendered by a member of a learned profession." N.C.G.S. § 75-1.1(b) (1988). Unlike the earlier version, only professional services are excluded from the definition of commerce. When some subjects or things are specifically excluded from statutory coverage, all others are assumed included. *See generally* 82 C.J.S. *Statutes* § 333 (1953). Furthermore, the elimination of the restrictive language from the statute indicates the Legislature intended the Act to facilitate wider imposition of liability. This view is bolstered by the addition of the "in or *affecting* commerce" language to N.C.G.S. § 75-1.1(a) (emphasis added) which significantly expanded the scope of liability from the old language which contemplated liability only for acts and practices *in* commerce. In addition, the Legislature's elimination of the restrictive term "trade" from the original version "clearly 'constituted a substantive revision intended to expand the potential liability for certain proscribed acts.' " *Talbert v. Mauney*, 80 N.C. App. 477, 480, 343 S.E.2d 5, 8 (1986) (quoting *United Roasters, Inc. v. Colgate-Palmolive Co.*, 485 F.Supp. 1049 (E.D.N.C. 1980), *aff'd*, 649 F.2d 985 (4th Cir.), *cert. denied*, 454 U.S. 1054, 102 S.Ct. 599, 70 L.Ed.2d 590 (1981) ). Here a deceptive act by Ms. Kefgen or her husband arguably is in commerce since it involved a commercial transaction, the sale of a house. It could arguably also affect commerce since the alleged deception could affect this particular transaction. More significantly, deception affecting this transaction would affect commerce as a whole since each individual house sale affects commerce of house sales generally.

However, the court in *Robertson* has already interpreted the Act, as it now stands, and I am bound by that decision. *See In the Matter of Appeal from Civil Penalty*, 324 N.C. 373, 379 S.E.2d 30 (1989). Thus, I must concur with the majority that summary judgment was correctly granted to Ms. Kefgen on the Unfair Trade

Practices Act claim on the grounds that the sale was not in or affected commerce.

### III

### DONALD O. THOMPSON

Regarding the plaintiffs' claim of fraud against Donald O. Thompson, the housebuilder, the record shows that Mr. Thompson submitted a letter to the plaintiffs attesting to the general soundness of the house. Whether this assertion will form the basis for a fraud claim is an issue properly left for the jury since the complaint and record contain conflicting evidence of the elements of fraud. The trial court improvidently granted summary judgment for Donald O. Thompson on this issue.

Similarly, the trial court improvidently granted summary judgment for Mr. Thompson on the unfair trade practices claim. His affirmation of the general soundness of the house could be considered a deceptive act affecting commerce. Mr. Thompson did not carry the burden of showing that the plaintiffs could not prove the acts in support of an element of this action. The fact that Mr. Thompson had no contractual relationship with the plaintiffs does not preclude the imposition of liability under N.C.G.S. § 75-1.1. See J. M. Westall & Co. v. Windswept View of Asheville, Inc., 97 N.C. App. 71, 387 S.E.2d 67 (1990).

On these claims, I would vacate the summary judgment as to defendants Beverly-Hanks & Associates, Dorothy E. Kefgen, Donald O. Thompson and Wynelle Thompson and remand for trial.