SEAN P. SMITH, PLAINTIFF v. SELCO PRODUCTS, INC., DEFENDANT

No. 8926SC79

(Filed 7 November 1989)

1. **Sales § 22.2 (NCI3d)— product liability—failure to obey cautionary warning—latent defects—no contributory negligence as matter of law**

In an action to recover for injuries received by plaintiff while operating a cardboard box riding gate baler designed and manufactured by defendant, plaintiff was not contributorily negligent as a matter of law under N.C.G.S. § 99B-4(1) in failing to obey a warning attached to the baler to keep his hands clear of the machine while it was in operation so as to entitle defendant to summary judgment because the evidence raised an issue as to the existence of latent defects in the baler which rendered the warning inadequate where plaintiff presented evidence tending to show: a tapeswitch safety sensor on the baler frequently broke because of its design and location; the baler did not include a mechanism to warn baler operators when the sensor was not functioning; at the time of the accident, defendant knew that its riding-gate baler violated OSHA and industry standards requiring a gate that must be pulled down before the machine will operate; and although defendant developed a package to replace the riding gates on its older models with pull-down gates, defendant made no systematic effort to replace the riding gates on the balers it sold to plaintiff's employer.

SMITH v. SELCO PRODUCTS, INC.

[96 N.C. App. 151 (1989)]

**Am Jur 2d, Plant and Job Safety—OSHA and State Laws § 28; Products Liability §§ 334, 335, 339, 344-352, 367-369, 400, 931 et seq.; Summary Judgment § 27.**

**2. Sales § 22.2 (NCI3d) — product liability—placing hand in cardboard box baler—no contributory negligence as matter of law**

In an action to recover for injuries received by plaintiff while operating a cardboard box baler designed and manufactured by defendant, the evidence on motion for summary judgment did not show that plaintiff failed to exercise reasonable care under the circumstances in violation of N.C.G.S. § 99B-4(3) as a matter of law when he reached into the baler to retrieve a knife while the platen was descending where plaintiff presented evidence that it was a regular practice for baler operators to place their hands in the bale chamber during operation to prevent cardboard boxes from falling out and to remove objects inappropriate for baling; plaintiff's employer was aware of this practice by its workers; baler operators relied on a tapeswitch safety sensor to protect them but the sensor was not functioning at the time of plaintiff's accident; and plaintiff had never known the sensor to fail and was unaware of its poor maintenance history.

**Am Jur 2d, Plant and Job Safety—OSHA and State Laws § 28; Products Liability §§ 334, 335, 339, 344-352, 367-369, 400, 931 et seq.; Summary Judgment § 27.**

APPEAL by plaintiff from *Snepp, Jr., Judge.* Order entered 6 September 1988 in Superior Court, MECKLENBURG County. Heard in the Court of Appeals 12 September 1989.

In this products liability action plaintiff seeks damages from defendant for injuries received while operating a cardboard box baler designed and manufactured by the defendant, Selco Products, Inc. (Selco). Upon completion of discovery, defendant moved pursuant to Rule 56(c) of the N.C. Rules of Civil Procedure for summary judgment in its favor. After an examination of the discovery materials and other evidence, and having heard the arguments of counsel for both sides, an order was entered granting defendant's motion. Plaintiff appealed, and it was stipulated and agreed by counsel for both parties that the sole basis for the Summary Judgment Order and the sole issue for this appeal is the correctness of the court's ruling that plaintiff was contributorily negligent as a matter

SMITH v. SELCO PRODUCTS, INC.

[96 N.C. App. 151 (1989)]

of law. Plaintiff's complaint contains the following allegations of fact:

Defendant is a corporation organized under the laws of the state of Georgia, and at the relevant times was doing business in North Carolina. Plaintiff, Sean P. Smith, worked as a part-time stocker and bagger at Food Lion Store #111 in Matthews, North Carolina. The accident occurred on the evening of 3 June 1986 while Smith was at work. His left arm became caught in a cardboard box baler and was torn off above the elbow.

It is important to understand how this baler works. The baler is an industrial trash compactor, about the size of a dumpster, designed for the specific purpose of crushing cardboard boxes into 60-inch wide bundles. The baler on which the plaintiff was injured was classified as a "riding gate" baler, designed so that the bale chamber at the front of the machine remains open as the baler's ram, or platen, begins to cycle downward to crush the boxes. The platen is a hydraulic press, like a large piston, which moves from the top to the bottom of the baler. The safety riding gate is attached to the side of the platen facing the front where the bale operator stands. During the loading phase of the process, the platen is retracted at the ceiling of the baler creating an opening below the riding gate. The operator loads cardboard boxes into the baler's bale chamber much as one would put a bag of trash into a dumpster. The boxes are placed into the chamber through the rectangular opening that is created between the bottom of the riding gate and the top of the bale cabinet door, which forms the front of the machine below waist level and through which the cardboard bales are removed after crushing. A red and white cautionary decal was attached to the front of the baler at the top of the bale gate. It read: CAUTION—KEEP HANDS CLEAR OF MACHINE WHILE IN OPERATION. However, the caution decal had been placed on the baler only a week or so before Smith's accident to replace an identical, but older decal that had become torn, illegible, and marred with graffiti.

The baler's control box was on the right side, set back several inches from the front face of the machine. It contained buttons marked "up," "down," and "emergency stop," as well as a "full bale" indicator light. The baler was activated by pressing the "down" button. After the machine was activated, the platen began to descend. The riding gate moved down with the platen, closing

the rectangular opening that led into the bale chamber until the gate met the top of the bale cabinet door. The platen continued to descend below the top of the cabinet door into the bottom of the bale chamber. At the end of the cycle, the platen returned to the start position at the ceiling of the baler.

As a safety precaution, a "tapeswitch" pressure-sensitive strip was fastened to the bottom of the riding gate, running the length of the gate. If the tapeswitch strip came into contact with an object during the riding gate's descent, the tapeswitch was triggered, halting the ram's descent and causing it to retract to its upward position, much as an elevator door retracts upon contact with part of a person's body.

At the time of this accident, Smith had placed several boxes into the bale chamber and activated the baler by pressing the down button. After the compression cycle had begun, Smith noticed that a case cutter, a razor-sharp knife used by employees to open boxes, had been mislaid inside the baler. Smith reached into the baler with his left hand and attempted to remove the case cutter, but the platen and riding gate struck his arm. On this occasion, however, the safety tapeswitch apparently failed to operate properly. The ram continued on its downward cycle, trapped Smith's arm, and ripped it off just above the elbow.

*Cannon & Blair, by Bentford E. Martin and Paul A. Reichs, for plaintiff appellant.*

*Golding, Meekins, Holden, Cosper & Stiles, by Frederick C. Meekins; and Rodney A. Dean, for defendant appellee.*

*Blanchard, Twiggs, Abrams & Strickland, by Douglas B. Abrams, for North Carolina Academy of Trial Lawyers, Amicus Curiae.*

ARNOLD, Judge.

The only issue we will review is whether the basis of the summary judgment order for defendant, that the plaintiff was contributorily negligent, is supported by the records, briefs, and other arguments. Selco argues that plaintiff was guilty of negligence under two separate sub-parts of N.C.G.S. § 99B-4: that his failure to obey a cautionary decal affixed to the baler constituted contributory negligence under N.C.G.S. § 99B-4(1); and that by reaching into the baler while the platen was descending, plaintiff failed to

## SMITH v. SELCO PRODUCTS, INC.

[96 N.C. App. 151 (1989)]

exercise reasonable care under the circumstances, in violation of N.C.G.S. § 99B-4(3).

N.C.G.S. § 99B-4 reads in pertinent part:

Injured parties' knowledge or reasonable care.

No manufacturer or seller shall be held liable in any product liability action if:

(1) The use of the product giving rise to the product liability action was contrary to any express and adequate instructions or warning delivered with, appearing on, or attached to the product or on its original container or wrapping . . .

\* \* \* \*

(3) The claimant failed to exercise reasonable care under the circumstances in his use of the product, and such failure was a proximate cause of the occurrence that caused injury or damage to the claimant.

We are asked here to review the application of these two sections of the statute as they apply to a motion for summary judgment. Rule 56 of N.C. Rules of Civil Procedure provides that summary judgment will be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to judgment as a matter of law." N.C.G.S. § 1A-1, Rule 56. A moving party may prevail if it meets the burden (1) of proving an essential element of the opposing party's claim is nonexistent, or (2) of showing through discovery that the opposing party cannot produce evidence to support an essential element of his or her claim (citations omitted). Generally, this means that the moving party is entitled to judgment as a matter of law where on the "undisputed aspects of the opposing evidential forecasts," there is no genuine issue of fact. 2 McIntosh, N.C. Practice and Procedure § 1660.5 (2d ed. Supp. 1970).

Nevertheless, it is widely acknowledged that certain claims or defenses are not well suited to summary judgment. For example, summary judgment is rarely appropriate in a negligence case. *City of Thomasville v. Lease-Afex, Inc.*, 300 N.C. 651, 268 S.E.2d 190 (1980). This is because the determination of essential elements of these claims or defenses to these claims are within the peculiar expertise of the fact finders. *Moore v. Fieldcrest Mills, Inc.*, 296

N.C. 467, 251 S.E.2d 419 (1979); 10A Wright, Miller & Kane, Federal Practice and Procedure § 2729 (2d ed. 1973). Similarly, contributory negligence is a jury question unless the evidence is so clear that no other conclusion is possible. *City of Thomasville*, 300 N.C. at 658, 268 S.E.2d at 195-196; *Cowan v. Laughridge Const. Co.*, 57 N.C. App. 321, 326, 291 S.E.2d 287, 290 (1982). "[P]roximate cause is ordinarily a question of fact for the jury, to be solved by the exercise of good common sense in the consideration of the evidence of each particular case." W. Prosser, Handbook of the Law of Torts § 45, at 290 (4th ed. 1971); *see Williams v. Power & Light Co.*, 296 N.C. 400, 403, 250 S.E.2d 255, 258 (1979).

In the present action, reasonable men could differ as to whether plaintiff exercised prudence in his operation of the baler. Because the evidence will support a finding that defendant's negligence was the proximate cause of plaintiff's injuries, the court erred in granting summary judgment in the defendant's favor.

[1] Contributory negligence was not established in this case as a matter of law because Smith violated a warning attached to the baler. A manufacturer must properly inform users of a product's hazards, uses, and misuses or be liable for injuries resulting therefrom under some circumstances. *Milikan v. Guilford Mills, Inc.*, 70 N.C. App. 705, 320 S.E.2d 909 (1984), *cert. denied*, 312 N.C. 798, 325 S.E.2d 631 (1985). An issue arises here as to whether or not latent hazards existed in this baler, which rendered the attached warning inadequate.

Evidence indicates that Selco may not have used reasonable care in designing its riding gate baler. In *Corprew v. Geigy Chemical Co.*, 271 N.C. 485, 492, 157 S.E.2d 98, 103 (1967), the North Carolina Supreme Court stated:

> As a general rule a manufacturer is under a duty to make an article carefully where its nature is such that it is reasonably certain to place life and limb in peril where negligently made, and he is liable to a third person for an injury resulting from a failure to perform this duty.

At the time Selco designed its riding-gate baler, the company, although under a duty to do so, did not inform itself about what safety designs and methods were available in the industry. *See Jenkins v. Helgren*, 26 N.C. App. 653, 217 S.E.2d 201 (1975). Also an issue arises here concerning the adequacy of Selco's testing of

SMITH v. SELCO PRODUCTS, INC.

[96 N.C. App. 151 (1989)]

its product. A manufacturer is under a duty to make reasonable tests to discover any latent hazards. *See Cockerham v. Ward and Astrup Co. v. West Co.*, 44 N.C. App. 615, 262 S.E.2d 651, *disc. rev. denied*, 300 N.C. 195, 269 S.E.2d 622 (1980).

According to evidence provided in the record, normal operation of the Selco's riding-gate baler frequently led to malfunctions of the safety tapeswitch. Paul Levering, a Food Lion maintenance mechanic, stated in his deposition that tapeswitches on the Selco balers frequently broke because of the way they were designed, located, and installed by Selco. He had replaced several defective tapeswitches, including tapeswitches on the baler that injured plaintiff. Levering found the tapeswitch wires to be too short, which caused them to break or pull out of the tapeswitch. Jim Tonseth, Food Lion's former manager of maintenance, stated, "there were numerous instances where the tapeswitch wires, as designed and located by Selco, either broke or otherwise failed to function. . . . [T]he failures appeared to be caused by either the shortness of the tapeswitch wires, or their location along the outside of the baler."

Compounding this problem, the baler's design did not include a mechanism to warn bale operators when the tapeswitch sensor was not functioning. In his deposition, Forrest Wildes, president of Selco Products, recognized that there was no way for an operator to know that the tapeswitch was not working without operating the machine. Yet, no warning concerning this extremely dangerous aspect of the baler appeared on the machine. In addition, "fail safe" technology, which would automatically shut the baler off and not allow its operation at all if the tapeswitch sensor circuit was broken, was available in the industry and in use before Selco manufactured its first riding-gate baler. The manufacturer of a product has the duty to provide adequate safety devices on its products. If a product is inherently dangerous due to its design, then at the least the safety precaution of an adequate warning that is reasonably commensurate with the dangers involved must be provided. *See Corprew v. Geigy Chemical Co.*, 271 N.C. 485, 157 S.E.2d 98.

The record also shows that at the time of the accident the Selco riding-gate baler violated both OSHA and industry standards. Michael T. Peak, an OSHA investigator, stated in an affidavit concerning his report on Smith's accident:

[I]t was my finding that the Selco baler on which Mr. Smith was injured did not comply with North Carolina or Federal

OSHA regulations. Specifically, I found the baler to be in violation of OSHA Section 1910.212(a)(3)(ii), which requires that the baler, as operated in the employer's workplace, be designed and constructed as to prevent the operator from having any part of his body in the danger zone during the operating cycle. Because the subject Selco baler was designed so that the gate to the bale chamber rides down with the ram, the baler could be operated without the gate in a closed position. Since the baler remained in this condition as operated at the Food Lion store, it was in violation of the applicable OSHA standard.

Selco apparently knew several years before the Smith accident that their riding-gate baler violated these standards. In 1982, industry standards changed, requiring that all balers be equipped with a door on the front that must be pulled down, sealing off the bale chamber from access by the operator before the machine would operate. As a result, Selco abandoned its riding-gate design, but did not recall those balers already in the market. When the industry standard changed, Selco developed a "retro-fit" package to replace the riding gates on its older models with "pull down" gates, but the company made no systematic effort to retrofit the riding-gate balers it had sold Food Lion. After Smith's accident, Food Lion hired an independent contractor to remove the safety gates from all of its riding-gate balers and replace them with pull down gates.

A manufacturer does not completely discharge its duty to warn simply by providing some warnings of some dangerous propensity of its product at the time of sale. A continuing duty exists to provide post-sale warnings of any deficiencies it learns exists in the product to users. A manufacturer may be held liable for negligence if he "sells a dangerous article likely to cause injury in its ordinary use and the manufacturer fails to guard against hidden defects and fails to give notice of the concealed danger." *Davis v. Siloo Inc.*, 47 N.C. App. 237, 244, 267 S.E.2d 354, 359, *disc. rev. denied*, 301 N.C. 234, 283 S.E.2d 131 (1980).

It would be improper for us to ignore this type of evidence concerning the deficient design and warnings of the Selco baler and hold the plaintiff contributorily negligent at the summary judgment stage of this proceeding for failure to heed the attached decal. *See Fieldcrest Mills*, 296 N.C. 467, 251 S.E.2d 419; *City of Thomasville*, 300 N.C. at 651, 251 S.E.2d 419.

SMITH v. SELCO PRODUCTS, INC.

[96 N.C. App. 151 (1989)]

[2]  We now turn to defendant's second contention that Smith did not act as a reasonably prudent person under the circumstances. Again, we disagree with defendant that plaintiff was contributorily negligent as a matter of law. Specifically, a question arises whether this riding-gate baler could be efficiently and effectively operated without the operators at times placing their hands in the bale chamber. Six Food Lion employees, who frequently operated the baler before Smith's injury, signed affidavits stating that it was regular practice for workers to place their hands in the bale chamber during operation, and that doing so was necessary to prevent cardboard boxes from falling out during its operation. Three other employees had reached into the chamber while the baler was operating to pull out foreign objects prior to Smith's injury.

Despite defendant's numerous contentions, it appears clear that Smith and the other bale operators relied on the tapeswitch safety sensor as an additional stop button during the operation of the baler. The actual stop button was located on the side of the baler, out of reach for operators standing at the front left of the baler. In his deposition, Smith testified he had witnessed other bale operators reaching into the bale chamber, and that he had never known the tapeswitch to fail nor was he aware of its poor maintenance history.

As N.C.G.S. § 99B-4(3) of the Products Liability statute indicates, the claimant's behavior "under the circumstances" must be considered in determining contributory negligence. Reaching into the bale chamber to push in boxes and grab objects inappropriate for baling was clearly the custom among the Food Lion workers. Food Lion management was aware of this practice by its workers. In North Carolina, a servant's conduct "which otherwise might be pronounced contributory negligence as a matter of law is deprived of its character as such if done at the direction or order of defendant [employer]." *Cook v. Tobacco Co.*, 50 N.C. App. 89, 96, 272 S.E.2d 883, 888, *disc. rev. denied*, 302 N.C. 396, 279 S.E.2d 350 (1981). "[I]f a rule has been habitually violated to the employer's knowledge, or violated so frequently and openly for such a length of time that in the exercise of ordinary care he should have ascertained its nonobservance, the rule is waived or abrogated." *Swaney* at 543, 131 S.E.2d at 610. It must be noted another sticker was attached to the front of the baler. It read: "YOUR STORE LOSES MONEY ON FREIGHT IF EACH BALE IS NOT PACKED

AS SOLIDLY AS POSSIBLE," reminding Food Lion workers they should prevent foreign objects from becoming packed into the bales.

While the employer is not the defendant in this case, the logic behind waiving the rule when a servant sues a master is also applicable when determining whether contributory negligence occurred under the "circumstances" here. All of Smith's co-workers reached into the bale chamber to keep the machine running efficiently, and in doing so, these workers relied on the tapeswitch sensor to protect them. In part, the provocation for this workplace practice can be traced to the design of the Selco baler.

These factors: questions about the design of the baler and its violation of OSHA and industry standards, and the workplace practice this design provoked create questions of whether the warning sticker was adequate and whether Smith's action was contributory negligence. Other reasonable inferences may be drawn from the circumstances of this accident. When such inferences are possible, summary judgment based on plaintiff's contributory negligence is not correct. *Dalrymple v. Sinkoe*, 230 N.C. 453, 53 S.E.2d 437 (1949); *Graham v. R.R.*, 240 N.C. 338, 82 S.E.2d 346 (1954).

The order of the trial court is reversed and the case is remanded.

Reversed and remanded.

Judges BECTON and COZORT concur.