E. GRADY JOLLY, Circuit Judge,
dissenting:
As Judge Parker’s opinion properly notes, the bottom-line question in the present case is whether the district court erred in granting the defendant’s motion for summary judgment. After a careful review of the applicable law and the relevant parts of the record, I am convinced that the trial court committed no error. Because the summary judgment evidence produced by Willis was insufficient to support a jury finding of negligence on the part of Roche, I respectfully dissent.
The initial — and fundamental — problem with the majority opinion is that it views the district court’s grant of summary judgment through the old and scratched lens of ancient summary judgment law as it stood before the Supreme Court’s 1986 summary judgment trilogy, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); and Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Although the motion for summary judgment was harshly viewed and strongly discouraged prior to 1986,[1] the Supreme Court made clear in Celotex that summary judgment should not be regarded as a disfavored procedural shortcut: Summary judgment is “an integral part of the Federal Rules ... which are designed ‘to secure the just, speedy and inexpensive determination of every action.’ ” Celotex, 477 U.S. at 327, 106 S.Ct. at 2555 (quoting Fed. R.Civ.Proc. 1).
Although the majority begrudgingly pays muffled lip service to the current law on summary judgment, it makes clear its disfavor for such principles at the very beginning of its opinion, intimating that we should be particularly wary of this grant of summary judgment. First, the majority states that courts must be careful not to “ ‘use summary judgment as a “catch penny contrivance.” ’ ” See maj. op. at 1371. This particular fear of summary judgment finds its roots in a 194.0 Fifth Circuit case.[2] Furthermore, the primary and more recent case on which the majority relies, Fontenot v. Upjohn, used this language specifically to emphasize that courts should not be so suspicious of summary judgment — the “early disposition of baseless claims and defenses is insistent and well founded.” Fontenot, 780 F.2d at 1197. After the trilogy, it is clear that “[o]ld dicta urging unusual restraint are no longer valid.” 1 CHILDRESS & Davis, supra note 1, § 5.04, at 5-48.
*1379 Next, the majority states that summary judgment should not be applied in negligence eases. See maj. op. at 1372. Again, however, its support for this dubious overstatement is tenuous: The Wright & Miller citation noted by the majority in turn cites a North Carolina state court case as its authority,[3] and the majority’s other citation, Gauck v. Meleski,[4] dates back to 1965. Furthermore, even though we repeated this sentiment in a more recent case, Lavespere v. Niagara Mach. & Tool Works, Inc.,[5] we went on to uphold the district court’s grant of summary judgment in that case, noting that the determinative question is whether there is sufficient evidence to support a jury finding in favor of the nonmovant. If there is insufficient evidence, a jury can decide no question, no matter how “inherently normative” the question may be. Lavespere v. Niagara Mach. & Tool Works, Inc., 910 F.2d at 178-79; see also Fontenot, 780 F.2d at 1196 (summary judgment was appropriate in defective design case).
Ultimately, the majority concludes that Willis has “called into question” whether Roche was negligent in its testing of Willis’s urine sample. Maj. op. at 1375. Again, however, the majority’s focus is outdated. There is no doubt that some questions do remain unresolved in the scant record before us, but, in the light of the summary judgment law applicable today, those questions are not the question.[6] After Celotex, the question is whether the parties to the suit have satisfied their respective evidentiary burdens. In the present case, the answer is no: Willis simply did not carry his burden.
In Lavespere we stated that a movant for summary judgment can satisfy his initial burden by “submit[ting] evidentiary documents that negate the existence of some material element of the nonmoving party’s claim or defense.” Lavespere, 910 F.2d at 178. In the present ease, Roche produced summary judgment evidence, in the form of an expert affidavit, that specifically and completely responded to, and negated every allegation set out in Willis’s complaint. Thus, Roche made a prima facia showing that it was entitled to summary judgment, and the summary judgment burden then shifted to Willis to show that a genuine, material issue of fact remained for trial.
In order to carry this responsive burden, Willis was required to go beyond his pleadings and produce evidence that would have supported a reasonable jury in returning a verdict in his favor. Anderson, 477 U.S. at 248, 106 S.Ct. at 2510. Willis’s evidence should have contained “specific facts,”[7] because Anderson provides that if the pretrial evidence “is merely colorable” or “is not significantly probative,” summary judgment should be granted. Anderson, 477 U.S. at 249-50, 106 S.Ct. at 2511. When the non-moving plaintiff comes forth with unspecific, insufficient evidence, the court must grant the summary judgment because, in that case, only an irrational trier of fact could return a verdict in the plaintiffs favor. Matsushita, 475 U.S. at 587, 106 S.Ct. at 1356 (‘Where the record taken as a whole could not lead a rational trier of fact to find for the- nonmov-ing party, there is no ‘genuine issue for trial.’” (emphasis added)).
In an attempt to meet his burden, Willis produced the following evidence:
*1380 1. Roche discovered a potential problem with methodology used to confirm positive tests for amphetamines;
2. it appeared that this problem was isolated to Roche and to the confirmation of amphetamines; and
3. it appeared the problem began in June 1990.
Judge Parker states that this evidence, “read in the light most favorable to Willis ... suggests that Roche knew or should have known of a problem with its methodology as early as June 1990.” Maj. op. at 1375. Willis’s evidence, however, “suggests” no such conclusion, much less offers and evidentiary proof, either direct or circumstantial.[8] In all due respect, no rational court would hold Roche liable in negligence based on this scant and disconnected evidence.
As the majority has noted, it is a “longstanding, bedrock summary judgment princi-pien” that we must construe the evidence presented, and any reasonable inferences therefrom, in the light most favorable to the nonmovant. This standard, however, does not allow, much less require, that we draw strained and unreasonable inferences in favor of the nonmovant. In the present case, in order for a jury to return a verdict in favor of Willis, it would either have to make an unsupported leap in logic or rely on speculative evidence that certainly is not included in the summary judgment record. Thus, based on the record evidence standing alone, no reasonable juror could conclude that Roche-failed to use due care.
The essence of Willis’s failure is that his evidence simply fails to go far enough to establish negligence. In other words, Willis’s summary judgment evidence may, to be sure, leave open the possibility that Roche was negligent, i.e., nothing in the evidence forecloses the possibility that Roche should have known that its testing methodology was unreliable. But Willis was required to do “more than simply show that there is some metaphysical doubt as to the material facts.” Matsushita, 475 U.S. at 586, 106 S.Ct. at 1356. A “merely colorable” claim is not enough. Anderson, 477 at 249-50, 106 S.Ct. at 2511. Instead, Rule 56 demands that Willis set out “specific facts” pointing to some act of negligence on the part of Roche. See Matsushita, 475 U.S. at 587, 106 S.Ct. at 1356; Lavespere, 910 F.2d at 178.
Willis, however, came forth with no such minimally required evidence. Willis identified no single negligent act of Roche or of anyone else. Instead, the extent of Willis’s evidence was that anomalies had resulted from Roche’s drug testing procedures, that Roche had discovered the problem, and that Roche had its NIDA certification revoked because of excessive false-positive results. Willis’s evidence detailing the problem that Roche discovered (i.e., that the chemical agent CHFB reacted with ephedrine and pseudoephedrine to produce a false positive result) may well prove the cause of his anomalous drug-test results, but it in no way supports a finding of negligence on the part of Roche.[9]
In sum, I find that the majority has taken this weak, factually-unsupported case, and has back filled the facts and engineered the applicable law at every turn in order to reverse the district court’s judgment and to remand the case. Even the legal basis for this negligence claim is anything but settled under Texas law.
As it was presented in the district court, and as it is now presented to us, this is a meritless case that was wholly appropriate for summary judgment. I would affirm.

. 1 Steven A. Childress & Martha S.'Davis, Federal Standards of Review § 5.04, at 5-26 (2d ed. 1992).

. The majority cites Fontenot v. Upjohn Co., 780 F.2d 1190, 1197 (5th Cir.1986) (quoting William W. Schwarzer, Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact, 99 F.R.D. 465, 466 (1984), which in turn quotes Whitaker v. Coleman, 115 F.2d 305, 307 (5th Cir.1940)).

. See 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2729 (Supp.1993) (citing Smith v. Selco Products, Inc., 96 N.C.App. 151, 385 S.E.2d 173, 175 (1989)).

. 346 F.2d 433, 437 (5th Cir.1965).

. 910 F.2d 167, 178-79 (5th Cir.1990), cert. denied, -U.S. -, 114 S.Ct. 171, 126 L.Ed.2d 131 (1993).

. “[Tlhe Court now frames the primary issue in summary judgment motions not as whether enough evidence exists to raise an inference to be resolved at trial, but whether sufficient evidence in the pretrial record exists to allow the plaintiff to win at trial or to survive a motion for directed verdict, were one based on the facts in the pretrial record. That is a higher threshold for non-movants to. survive a summary judgment motion than was expressed in prior Supreme Court cases." 1. Childress & Davis, supra note 1, § 5.04, at 5-32.

.Fed.R.Civ.Proc. 56(e); see Matsushita, 475 U.S. at 587, 106 S.Ct. at 1356; Lavespere, 910 F.2d at 178.

. Nowhere in Willis's briefs does he argue that Roche should have known of a problem with its methodology as early as June 1990, which is the theory of negligence advanced by majority opinion. Thus, the majority not only supplies speculative evidence to fill the evidentiary gaps left by Willis, but it supplies his theory of negligence as well. The wonder is whether there remains any role for Willis's lawyer.

. Willis's failure in this regard presents yet another basis for affirming the district court's grant of summary judgment on Willis’s defamation claim. See maj. op. at 1377. Willis's evidence will not support an essential element of his defamation claim- — that is, Willis cannot show that Roche published information that it should have known was false. See Durham v. Cannan Communications, Inc., 645 S.W.2d 845 (Tex.App.—Amarillo 1982, writ dism’d).