**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

WILLIAM S. MILLS, Administrator of
the Estate of Amy Geissinger,
<u>Plaintiff-Appellant,</u>

v.

GENERAL MOTORS CORPORATION;
COACH CRAFTERS, INCORPORATED,
<u>Defendants-Appellees,</u>

and

No. 96-2359

GRIMES AEROSPACE COMPANY,
formerly doing business as Midland
Ross Corporation, formerly doing
business as F.L. Aerospace
Corporation, formerly doing
business as F.L. Aerospace
Holdings Corporation,
<u>Defendant.</u>

Appeal from the United States District Court
for the Middle District of North Carolina, at Durham.
William L. Osteen, Sr., District Judge.
(CA-94-733-1)

Argued: May 9, 1997

Decided: July 23, 1997

Before RUSSELL and WILLIAMS, Circuit Judges, and
MICHAEL, Senior United States District Judge for the
Western District of Virginia, sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Jonathan Eric Halperin, LAW OFFICES OF PATRICK
M. REGAN, Washington, D.C., for Appellant. Fred Joseph Fresard,
BOWMAN & BROOKE, Detroit, Michigan; William Kearns Davis,
BELL, DAVIS & PITT, P.A., Winston-Salem, North Carolina, for
Appellees. **ON BRIEF:** Patrick M. Regan, LAW OFFICES OF PAT-
RICK M. REGAN, Washington, D.C.; Jerome P. Trehy, Jr.,
TWIGGS, ABRAMS, STRICKLAND & TREHY, P.A., Raleigh,
North Carolina, for Appellant. Frank Nizio, BOWMAN & BROOKE,
Detroit, Michigan; J. Donald Cowan, Jr., SMITH, HELMS, MUL-
LISS & MOORE, L.L.P., Greensboro, North Carolina, for Appellee
General Motors. Alan M. Ruley, BELL, DAVIS & PITT, P.A.,
Winston-Salem, North Carolina, for Appellee Coach Crafters.

_____

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

This litigation arises out of the tragic death of Amy Geissinger, a
Duke University student who was killed after she fell from the rear
door of a university bus while the bus was turning a corner. In 1977,
defendant-appellee General Motors Corp. ("GMC") manufactured the
RTS-II bus, which it sold to the Rhode Island Transit Authority in
1978. In 1991, defendant-appellee Coach Crafters, Inc. purchased the
bus, which it refurbished and sold to Duke University according to an
agreed-upon set of specifications.

Plaintiff-appellant Mills filed suit against GMC on behalf of the
estate of Ms. Geissinger, alleging (1) negligent design, manufacture,

2

and distribution of the bus, the defect specifically being the design of the rear doors; (2) failure to warn and breach of a post-sale duty to warn; (3) failure to retrofit or recall; (4) breach of an implied warranty of merchantability; and (5) a claim for punitive damages. Mills filed identical claims against Coach Crafters, except that plaintiff alleged that Coach Crafters was negligent in the re-manufacture and distribution of the refurbished bus. Finally, Mills also sued defendant Midland Ross, the manufacturer of the bus's rear door motors and linkages. Prior to adjudication of defendants' motions for summary judgment, Mills settled with Midland Ross. Thus, only GMC and Coach Crafters remain parties to this suit.

The district court granted defendants' separate motions for summary judgment. Although the court noted the emotional appeal of the case, it found that Mills's suit against GMC was barred by North Carolina's six year Statute of Repose, N.C. Gen. Stat.§ 1-50(6). The court granted Coach Crafters's motion for summary judgment because it found that defendant (1) had neither actual nor constructive knowledge of any alleged defect in the Midland Ross doors; and (2) the contract between Duke University and Coach Crafters explicitly excluded an implied warranty of merchantability. Mills appeals from the lower court's decision. We will review the district court's grant of summary judgment de novo. See Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc., 43 F.3d 922, 928 (4th Cir. 1995).

## I. GMC'S MOTION FOR SUMMARY JUDGMENT

The district court granted GMC's motion for summary judgment because it found that Mills's suit was barred by North Carolina's Statute of Repose. Under N.C. Gen. Stat. § 1-50(6),

> No action for the recovery of damages for personal injury, death or damage to property based upon or arising out of any defect or in any failure in relation to a product shall be brought more than six years after the date of initial purchase for use or consumption.

Because Ms. Geissinger was injured more than six years after GMC had sold the RTS-II bus, the court concluded that any claim for personal injuries was barred as against GMC.

3

On appeal, Mills first argues that summary judgment should not have been granted because discovery was ongoing and might have resulted in the production of materials that would have had a direct bearing on the factual issues related to the motion. Mills next argues that § 1-50(6) does not apply to his failure to warn claim. Mills also argues that GMC's negligence continued beyond the sale of the bus through its production and distribution of service manuals and bulletins, thus bringing plaintiff's claims within the period permitted by the Statute of Repose. Finally, Mills makes the related argument that GMC's service manuals and bulletins are separately defective products that were sold within six years of Geissinger's death, thus avoiding § 1-50(6)'s bar. None of these arguments has merit.

A. Ongoing Discovery

The district court did not address plaintiff's first argument regarding discovery except to note that "[w]hether a statute of repose has expired is strictly a legal issue." Memorandum Opinion at 6, Mills v. General Motors Corp. (M.D.N.C. July 12, 1996) (No. 94CV00733) (J.A. at 1287) (citing Lamb v. Wedgewood South Corp., 448 S.E.2d 832, 836 (N.C. Ct. App. 1983)). Mills has failed to identify what evidence he believes that discovery would have produced, but regardless, the parties do not dispute the dates on which the bus was manufactured and the injury occurred. These facts alone are sufficient to make a determination as to the application of § 1-50(6); accordingly, a reversal on the basis of potential discovery is unwarranted.

B. Section § 1-50(6)'s Statutory Bar

"A statute of repose `serves as an unyielding and absolute barrier that prevents a plaintiff's right of action even before his cause of action may accrue,' and functions to give a defendant a vested right not to be sued if the plaintiff fails to file within the prescribed period." Lamb, 448 S.E.2d at 835 (citations omitted). GMC manufactured the RTS-II bus in 1977, and delivered the bus to its initial purchaser by 1978. Ms. Geissinger was killed in 1992. As a result, Ms. Geissinger's claim accrued "more than six years after the date of initial purchase," thus raising the statutory bar as to appellant's claims against GMC. Mills, however, makes several efforts to avoid application of the bar to his claims.

4

Mills first argues that a manufacturer's duty to warn of hidden defects continues beyond the six year period specified in North Carolina's Statute of Repose. Although North Carolina recognizes that a manufacturer has a continuing post-sale duty to warn consumers of dangerous defects that it later discovers, see Smith v. Selco Prods., Inc., 385 S.E.2d 173, 176-77 (N.C. Ct. App. 1989), this duty to warn of hidden defects does not extend beyond the six-year limit imposed by the Statute of Repose, see Davidson v. Volkswagenwerk, A.G., 336 S.E.2d 714, 716 (N.C. Ct. App. 1985). As stated in§ 1-50(6), no claim for injuries "arising out of . . . any failure in relation to a product" may be brought where the injury occurred more than six years after the product's manufacture. Mills's failure to warn claim relates to the sale and manufacture of the RTS-II bus. As a result, the claim is barred by § 1-50(6).

Mills also argues that GMC's production of allegedly insufficient service manuals and bulletins constituted a continuing pattern of negligence such that the statute of repose should not operate to bar appellant's claims. In support of this argument, Mills cites several cases from North Carolina and other jurisdictions. The North Carolina cases clearly are distinguishable from the instant case, inasmuch as the case at bar does not raise the equitable concerns that were present in Bryant v. Adams, 448 S.E.2d 832, 838 (N.C. Ct. App. 1994) (misrepresentations in discovery bars defendant from raising statute of repose), and One North McDowell Association of Unit Owners, Inc. v. McDowell Development Co., 389 S.E.2d 834 (N.C. Ct. App. 1990) (tolling agreement between parties estopped defendant from raising statutory bar). We are unpersuaded that the Minnesota cases relied on by appellant can be reconciled with Davidson.**1**

Finally, appellant argues that GMC's post-sale production of safety
_____

**1** In addition, with regard to appellant's citation of Hodder v. Goodyear Tire & Rubber Co., 426 N.W.2d 826 (Minn. 1988), we note, as did the court below, that the statute at issue in Hodder was "`not a typical statute of repose.'" Id. at 830. Instead, the statute at issue in Hodder was a "useful life" statute where the period of repose was defined by the useful life of the product, as determined by the trier of fact. Unlike the statute of repose in the case at bar, the statute in Hodder did not "specify a presumptive number of years after which an action cannot be brought." Id.

5

manuals and bulletins started the running of the statute of repose anew because the service manuals and bulletins themselves constituted separately defective products so as to support a claim of negligence. See Driver v. Burlington Aviation, Inc. , 430 S.E.2d 476 (N.C. Ct. App. 1993). This court has no quarrel with Driver, but the complaint in the instant case is premised merely on the defective design of the bus's rear doors. Nowhere does Mills's complaint allege that the service manuals or bulletins provided by GMC were a separately defective product. Accordingly, Driver is inapposite to the case at bar, and North Carolina's six year Statute of Repose applies.

For these reasons, the district court's grant of summary judgment to GMC will be affirmed.

## II. COACH CRAFTERS' MOTION FOR SUMMARY JUDGMENT

### A. Actual or Constructive Knowledge

Coach Crafters remanufactured the RTS-II bus according to a set of specifications that were agreed upon by Duke University and Coach Crafters. See Purchase Agreement, Ex. A (J.A. at 253-58). These specifications corresponded to GMC's original design, but incorporated certain additional modifications, none of which relate to the instant case, that GMC had recommended subsequent to the bus's original manufacture. Appellant contends that Coach Crafters was negligent because it failed to modify the rear doors to include a positive locking mechanism. The district court granted Coach Crafters's motion for summary judgment in part because it found that Coach Crafters had neither actual nor constructive knowledge that the rear doors of the RTS-II buses posed a danger so as to impose a duty on defendant, either as a manufacturer or a remanufacturer. Mills argues that the district court erred because Coach Crafters reasonably should have known of the dangers posed by the doors in light of numerous accidents that took place involving the rear doors of RTS-II buses, and in light of service bulletins issued by GMC regarding the rear doors of their buses.

Initially, it is important to distinguish between those RTS-II buses that were equipped with rear doors manufactured by Midland Ross, as was the bus in the instant case, and those buses that were equipped

6

with doors manufactured by Vapor Corp. The vast majority of buses manufactured by GMC were equipped with Vapor doors. Only a relatively small number of buses -- 330 out of 8300 buses -- were equipped with Midland Ross doors. Although Mills alleges that numerous injuries and fatalities occurred in accidents involving the rear doors of RTS-II buses, all of the incidents cited involved buses equipped with Vapor doors. The case at bar is the first and, as far as this court knows, the only incident involving Midland Ross doors -- there has never been an incident of the type seen in the instant case related to Midland Ross doors. As a result, Coach Crafters could not have discovered, even through reasonable investigation, prior incidents involving Midland Ross doors such that it would have been put on notice of the attendant dangers. Moreover, none of the GMC bulletins addressed any problems with the Midland Ross doors that relate to the accident in the instant case.[2]

Mills contends, however, that the absence of incidents involving buses equipped with Midland Ross doors is indicative of the small number of Midland Ross-equipped buses as compared to those equipped with Vapor doors, rather than any difference in the doors' safety. Mills argues that whether Vapor doors or Midland Ross doors are to be considered is irrelevant; the defect is the absence of any positive locking mechanism, such mechanism not being present in both models of doors. Accordingly, Mills contends that Coach Crafters had constructive knowledge of the dangers posed by Midland Ross doors by virtue of the incidents involving Vapor doors.

First, it is important to note that Coach Crafters denies having any knowledge of problems associated with Vapor doors. Nevertheless, even assuming that Coach Crafters should have known about the problems attendant with Vapor-equipped RTS-II doors, this knowledge would not have put Coach Crafters on notice of any dangers associated with Midland Ross doors. Although certain types of prod-

_____

[2] Although one bulletin was applicable to Midland Ross doors, it addressed the problem of "wind buffeting," whereby at speeds over 15 miles per hour, the rear door would open slightly, causing the bus to slow down until the doors closed. See J.A. at 1228-34. The bulletin did not address any problem of bus doors bursting open when pressure was applied by passengers.

7

ucts may pose a generic threat to consumers, see Morgan v. Cavalier Acquisition Corp., 432 S.E.2d 915 (N.C. Ct. App. 1993) (drink vending machines), a post-accident engineering analysis of the accident conducted by the National Highway Traffic and Safety Administration ("NHTSA") explained that Vapor doors and Midland Ross doors are very different from each other. See J.A. at 245. Specifically, the report noted that "[t]he Vapor system uses pneumatic motors of a different size, the mechanical linkage (and the mechanical advantage generated by the linkage) is different, and the air pressure required by the system is also different." Id. Appellant characterizes the distinction between the two types of doors as "irrelevant," see Reply Brief of Appellant at 3, Mills v. General Motors Corp. (No. 96-2359) (4th Cir. Jan. 13, 1997), but the NHTSA report is clear that this accident was different from those involving Vapor-equipped buses. In fact the NHTSA report explained:

> The single accident that occurred was the result of a combination of unfortunate circumstances. The doors on the subject bus were properly adjusted and the air pressure was correctly set. The woman that fell into the stairwell appears to have tried to stop her fall with her foot. Her foot landed at the area where the two doors meet at the outer edge of the lower step. Her foot deflected the doors just enough for her leg to be forced through. The doors remained closed and the air motor did not activate. Unfortunately her foot struck the pavement and was caught and run over by the rear wheel of the bus. This caused her body to be pulled through the doors. The doors, which are 7 feet tall and are held closed at the top, deflected just enough to allow her body to be pulled through. The doors still remained closed during this incident and the air motor did not cycle the doors. This event was unique, when contrasted with accidents involving RTS-II buses fitted with Vapor door operating systems. In the accidents involving Vapor-equipped buses, the doors actually opened, or were pushed open, and passengers fell out through the open doors.

> . . . .

> No safety-defect trend has been identified.

8

Id. at 247-48 (emphasis added). Although the NHTSA's report is a post hoc analysis of the accident, it persuasively distinguishes between Vapor doors and Midland-Ross doors, clearly illustrating why incidents involving Vapor-equipped buses would not be sufficient to put Coach Crafters on notice that there were defects in buses equipped with Midland Ross doors.

Ultimately, it is evident that the Midland Ross doors functioned as they were designed to function. Unlike those instances involving Vapor-equipped buses where the doors actually opened so as to permit passengers to fall out, the door in the instant case remained closed. Whatever defect, if any, that may have been present in the Midland Ross doors cannot be charged to Coach Crafters, the remanufacturer having no notice or knowledge, actual or constructive, that the rear doors posed a danger to passengers. Accordingly, Coach Crafters is entitled to summary judgment on Mills's negligence claims.

B. Breach of Implied Warranty of Merchantability

The district court found that there was no privity of contract between Ms. Geissinger and Coach Crafters such that appellant could assert a claim for breach of an implied warranty of merchantability. The court came to this conclusion because it characterized the agreement between Coach Crafters and Duke University as a contract for services. Appellant counters that the privity requirement has been relaxed in product liability actions for personal injury suits relating to the sale of goods, and that the sale of the bus by Coach Crafters to Duke was the sale of goods. Brief of Appellant at 28, Mills (No. 96-2359) (Nov. 19, 1996). After considering the contract at issue, we find without addressing the issue of privity that Coach Crafters is entitled to summary judgment on appellant's breach of warranty claim.

Appellant contends that the general warranty on the bus incorporates an implied warranty of merchantability. In support of this argument Mills quotes Exhibit B of the sales agreement, which states:

> CoachCrafters, Inc. warrants and guarantees the bus to be free from basic defects and related defects for twelve (12) months or 50,000 miles, whichever comes first.

9

> In addition to the basic warranty, CoachCrafters, Inc. warrants and guarantees the structure of the bus to be free of basic defects and related defects for a period of two (2) years, unlimited mileage.

J.A. at 259.

If a contract is unambiguous on its face, a court may interpret the contract as a matter of law. World-Wide Rights Ltd. Partnership v. Combe, Inc., 955 F.2d 242, 245 (4th Cir. 1992)."Where the terms of a . . . contract are clear and unambiguous, its terms `are to be taken and understood in their plain, ordinary and popular sense.'" Faber Indus., Ltd. v. Witek, 483 S.E.2d 443, 444 (N.C. Ct. App. 1997) (quoting Taylor v. Gibbs, 150 S.E.2d 506, 506 (N.C. 1966)). In the instant case, the contract is unambiguous on its face.

In addition to the language that appellant cites, the contract between Coach Crafters and Duke clearly states:

> THE EXPRESS WARRANTY SET FORTH IN THE LIMITED WARRANTY POLICY IS EXPRESSLY IN LIEU OF ANY OTHER EXPRESS OR IMPLIED WARRANTIES OR GUARANTEES WITH RESPECT TO BUSES OR ANY PART THEREOF, INCLUDING ANY IMPLIED WARRANTY OR [sic] MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE.

J.A. at 250. Because the express language of the agreement clearly rules out any implied warranties, we find as a matter of law that Coach Crafters is entitled to summary judgment on plaintiff's breach of warranty claim.

III. CONCLUSION

For the reasons stated, the district court's grant of summary judgment to GMC and Coach Crafters is

AFFIRMED.