TERRANCE LEE STILWELL, Plaintiff v. GENERAL RAILWAY SERVICES, INCORPORATED, Defendant

No. COA04-107

(Filed 7 December 2004)

**Negligence; Products Liability— failure to warn—directed verdict—contributory negligence—military contractor defense**

The trial court erred in a negligence, product liability, inadequate formulation, and failure to warn case by directing verdict in favor of defendant and a new trial is required in an action arising out of an accident where plaintiff's neck was injured while working as a brakeman on a rail car operated by the U.S. Army, because: (1) the issue of contributory negligence should have been submitted to the jury when plaintiff's supervisor ordered plaintiff to use the pertinent chair in the train's caboose and the chair was used for over a year without incident; and (2) defendant did not fully establish the applicability of the military contractor's defense since there was no evidence that defendant warned the Department of Transportation that these chairs were not for use on interchange.

Appeal by plaintiff from judgment entered 10 February 2003 and order entered 5 September 2003 by Judge R. F. Floyd, Jr., in Brunswick County Superior Court. Heard in the Court of Appeals 13 October 2004.

*Crossley McIntosh Prior & Collier, by Andrew Hanley, for plaintiff appellant.*

*Johnson Lambeth & Brown by Robert W. Johnson and Anna Johnson Averitt, for defendant appellee.*

McCULLOUGH, Judge.

Plaintiff appeals from the trial court's granting of a directed verdict on 10 February 2003 and a denial of a new trial motion on 5 September 2003. The action arose out of an injury to plaintiff's neck and subsequent surgery caused by an accident while plaintiff was working as a brakeman on a rail car operated by the U.S. Army between Leland, North Carolina, and Military Ocean Terminal at Sunny Point, a distance of approximately 30 miles. The railroad hauled munitions and military equipment for the Army and on occasion serviced some of the private industries located along the route, such as Archer, Daniels and Midland. On the date of the accident, 22 October 1997, the rail line was carrying chloride, acid or hydrogen peroxide for this company.

Defendant successfully bid on a contract issued by the United States Department of Transportation (DOT) to refurbish a caboose in use on this train on that date. While refurbishing this caboose, defendant substituted boat seats with no neck support instead of the high-backed chairs called for in the original specifications.

In October 1994, DOT issued a contract to defendant to refurbish this caboose. The contract stated in pertinent part:

> The caboose will be used by the Military for special service in Southport, North Carolina. All brakes and valves will be reconditioned or replaced if needed to meet the FRA and the Association of American Railroads (AAR) Interchanged rules. Couplers (both ends of caboose) shall be of type to be compatible for freight service. G. Interior will be stripped out entirely and replaced as shown by the attached sheet. H. . . . extra equipment to be installed and supplied by the contractor. . . . (2) caboose side chairs of cushion captain style.

During the renovation of this caboose, defendant provided boat-type chairs with no neck support instead of the captain's-type high-backed railroad chairs called for in specifications. Mr. Rich Copeland, defendant's former vice president, testified that a DOT employee had permitted this modification as his company could not locate chairs of the type specified. Mr. Copeland acknowledged that the type of chair provided would not be safe for normal use on interchange, but thought the caboose was to be used as a mobile office despite the contract language.

STILWELL v. GENERAL RY. SERVS., INC.

[167 N.C. App. 291 (2004)]

Plaintiff is a Department of Defense civil servant and had been working on this train line since 1994. As brakeman he would ride in the caboose, sitting in one of the chairs positioned to observe the train, monitoring for sparks to prevent fires, open doors and any other irregularity.

Plaintiff first used the chair in June 1996 at which time he reported the chair as unsafe. At safety meetings plaintiff continued to call attention to the unsafe chair. At trial plaintiff testified that he felt at risk when using the chair and admitted that under Sunny Point's safety rules he should not have performed any unsafe act. While promising to fix the problem and replace the chair, plaintiff's supervisor directed plaintiff to continue using the chair despite his objections, stating that plaintiff could either "like it, lump it or quit."

On 22 October 1997, while on a run from Leland to the Archer, Daniels facility, plaintiff's neck was injured when the slack went out of his train and he suffered a severe jolt. Upon the train's return to Sunny Point, plaintiff complained of neck pain and was taken to the hospital. He eventually had a three-level fusion operation by Dr. Melin, who testified that the jolt on that date was the likely cause of the injury and resulting surgery.

After the accident plaintiff filed suit alleging claims against defendant which included general negligence, product liability, inadequate formulation and failure to warn. In its answer defendant admitted the rail car was being used for its intended purpose.

At the conclusion of all the evidence, which included that set forth previously, as well as a rail car expert who testified for plaintiff that a seat of this type was unsafe, the trial court granted defendant's motion for a directed verdict and subsequently denied plaintiff's motion for a new trial. In its motion defendant argued that plaintiff was guilty of contributory negligence as a matter of law and that defendant was protected from suit by the military contractor defense.

Plaintiff appeals these two rulings and further argues that certain evidence introduced by defendant was inadmissible hearsay. For the reasons set forth, we reverse the trial court's grant of a directed verdict and order a new trial as we believe the issue of contributory negligence should have been submitted to the jury and that defendant did not fully establish the applicability of the military contractor's defense.

STILWELL v. GENERAL RY. SERVS., INC.

[167 N.C. App. 291 (2004)]

## DIRECTED VERDICT

The test for determining whether a motion for a directed verdict is supported by the evidence is the same as that for ruling on a motion for judgment notwithstanding the verdict. *Garrett v. Smith*, 163 N.C. App. 760, 594 S.E.2d 232 (2004). The Court must consider the evidence in the light most favorable to the non-moving party, giving the nonmovant the benefit of all reasonable inferences and resolving all conflicting evidence in his favor. *Martishius v. Carolco Studios, Inc.*, 355 N.C. 465, 562 S.E.2d 887 (2002); *Abels v. Renfro Corp.*, 335 N.C. 209, 436 S.E.2d 822 (1993). With this standard in mind, we turn to the issues before this Court.

## CONTRIBUTORY NEGLIGENCE

Normally issues such as negligence and contributory negligence are questions for the jury and are seldom appropriate for summary judgment or directed verdict. *Nicholson v. American Safety Utility Corp.*, 346 N.C. 767, 774, 488 S.E.2d 240, 244 (1997). We recognize that a person has a duty to avoid an open and obvious danger, *Gibbs v. Light Co.*, 268 N.C. 186, 150 S.E.2d 207 (1966); however, there are other factors present in this case that bear on this issue.

First, plaintiff had utilized this chair in the caboose for over a year without incident. This long use at least raises a question of the reasonableness of his actions, which is an issue for a jury. *Maulden v. Chair Company*, 196 N.C. 122, 144 S.E. 557 (1928).

Secondly, when a superior orders an employee to undertake an obviously risky job, a finding of contributory negligence depends on whether a reasonably prudent person under similar circumstances would comply with the order. *Noble v. Lumber Co.*, 151 N.C. 76, 78, 65 S.E. 622, 623 (1909). This principle is applicable even though defendant did not issue the order in question. In *Swaney v. Steel Co.*, 259 N.C. 531, 131 S.E.2d 601 (1963), the employee of a contractor sued the steel company that supplied a latently defective truss which the plaintiff was required to use. There our Supreme Court noted that a plea of contributory negligence cannot prevail: "A plea of contributory negligence would not have availed Newton unless the order plaintiff obeyed was so obviously dangerous that a reasonably prudent man under similar conditions would have disobeyed it and quit the employment rather than incur the hazard." *Noble*, 151 N.C. 76, 65 S.E. 622; *West v. Mining Corporation*, 198 N.C. 150, 150 S.E. 884 (1930).

A situation similar to the case *sub judice* is that of *Smith v. Selco Products, Inc.*, 96 N.C. App. 151, 385 S.E.2d 173 (1989), *disc. review denied*, 326 N.C. 598, 393 S.E.2d 883 (1990), where our Court stated:

> [T]he claimant's behavior "under the circumstances" must be considered in determining contributory negligence. Reaching into the bale chamber to push in boxes and grab objects inappropriate for baling was clearly the custom among the Food Lion workers. Food Lion management was aware of this practice by its workers. In North Carolina, a servant's conduct "which otherwise might be pronounced contributory negligence as a matter of law is deprived of its character as such if done at the direction or order of defendant [employer]." *Cook v. Tobacco Co.*, 50 N.C. App. 89, 96, 272 S.E.2d 883, 888, *disc. rev. denied*, 302 N.C. 396, 279 S.E.2d 350 (1981). "[I]f a rule has been habitually violated to the employer's knowledge, or violated so frequently and openly for such a length of time that in the exercise of ordinary care he should have ascertained its nonobservance, the rule is waived or abrogated." *Swaney*, [259 N.C.] at 543, 131 S.E.2d at 610.

*Id.* at 159, 385 S.E.2d at 177.

As plaintiff's supervisor ordered plaintiff to use the chair at issue, telling plaintiff to "like it, lump it or quit" and the chair was used for over a year without incident, it is clear that this issue should have been submitted to the jury. *See also Cook v. Tobacco Co.*, 50 N.C. App. 89, 272 S.E.2d 883 (1988), *disc. review denied*, 302 N.C. 396, 279 S.E.2d 350 (1981).

## MILITARY CONTRACTOR DEFENSE

At trial, defendant argued that as a military contractor, it was immune from suit. As the trial court did not specify on which ground it granted the directed verdict, we will next discuss this issue.

This defense was formally recognized by the U.S. Supreme Court in *Boyle v. United Technologies Corp.*, 487 U.S. 500, 101 L. Ed. 2d 442 (1988), where the Court agreed with the Fourth Circuit and held that:

> Liability for design defects in military equipment cannot be imposed, pursuant to state law, when (1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned

the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States.

*Id.* at 512, 101 L. Ed. 2d at 458.

*Boyle* involved the design of an escape hatch on a military helicopter. In explanation of the rationale for this policy, Justice Scalia stated:

It often involves not merely engineering analysis but judgment as to the balancing of many technical, military, and even social considerations, including specifically the trade-off between greater safety and greater combat effectiveness. And we are further of the view that permitting "second-guessing" of these judgments, see United States v. Varig Airlines, 467 U.S. 797, 814, 81 L. Ed. 2d 660, 104 S. Ct. 2755 (1984), through state tort suits against contractors would produce the same effect sought to be avoided by the FTCA exemption. The financial burden of judgments against the contractors would ultimately be passed through, substantially if not totally, to the United States itself, since defense contractors will predictably raise their prices to cover, or to insure against, contingent liability for the Government-ordered designs. To put the point differently: It makes little sense to insulate the Government against financial liability for the judgment that a particular feature of military equipment is necessary when the Government produces the equipment itself, but not when it contracts for the production. In sum, we are of the view that state law which holds Government contractors liable for design defects in military equipment does in some circumstances present a "significant conflict" with federal policy and must be displaced.

*Id.* at 511-12, 101 L. Ed. 2d at 457-58.

Defendant argues that the caboose (with the chair at issue) is an item of military equipment, as it was owned by the U.S. Army for use on a rail line that handled munitions, even though it was being used on a normal commercial run on the date of the incident.

While most of the cases arising since *Boyle* have involved unique military equipment, *e.g.*, *Ramey v. Martin-Baker Aircraft Co.*, 874 F.2d 946 (4th Cir. 1989) (ejection seat on jet aircraft), there has been a split in the federal circuits over whether the defense is available to all contractors. The following courts have held the defense applicable to all federal contractors: *Boruski v. United States*, 803 F.2d 1421-30 (7th Cir. 1986); *Burgess v. Colorado Serum Co.*, 772 F.2d 844, 846

STILWELL v. GENERAL RY. SERVS., INC.

[167 N.C. App. 291 (2004)]

(11th Cir. 1985); *Johnson v. Grumman Corp.*, 806 F. Supp. 212, 217 (W.D. Wis. 1992); *Vermeulen v. Superior Court of Alamada County*, 204 Cal. App. 3d 1192, 251 Cal. Rptr. 805, 809-10 (Cal. App. 1st Dist. 1988); *Carley v. Wheeled Coach*, 991 F.2d 1117, *cert. denied*, 510 U.S. 868, 126 L. Ed. 2d 150 (1993); *Yeroshefsky v. Unisys Corp.*, 962 F. Supp. 710 (1997); while other courts have held the defense is only available to military contractors: *e.g.*, *In re Hawaii Federal Asbestos Cases*, 960 F.2d 806, 810-12 (9th Cir. 1992); *In re: Chateaugay Corp.*, 146 B.R. 339 (S.D.N.Y. 1992); *Johnston v. United States*, 568 F. Supp. 351 (D. Kan. 1983); *Jenkins v. Whittaker Corp.*, 551 F. Supp. 110 (D. Haw. 1982).

While reserving any position on this issue until it can clearly be discerned that the trial court has in fact applied the military contractor defense, assuming arguendo the defense is applicable in this instance and was applied, we would find error. Our review of the record reveals an issue of fact as to at least one of the prongs of the defense.

The first prong of the defense requires proof that the Government (here the U.S. Department of Transportation) approved the specifications and design. As was stated in *Tozer v. LTV Corp.*, 792 F.2d 403 (4th Cir. 1986), *cert. denied*, 487 U.S. 1233, 101 L. Ed. 2d 931 (1988), this approval must be by more than a "mere rubber stamp." This test was set forth in the *Ramey* case as well.

In the case at bar, the vice president of defendant corporation testified concerning the changes in the specifications made pursuant to telephone conversations he had with the responsible DOT employee, Tim Newfell. Their recorded conversations, while admissible pursuant to N.C. Gen. Stat. § 8C-1, Rule 803(6) (2003), *see Allen v. Simmons*, 99 N.C. App. 636, 394 S.E.2d 478 (1990), do not mean that the jury is required to accept the conclusion that the DOT employee was not merely "rubberstamping" the defendant's supposed lack of ability to supply the chairs required in the original specification.

In fact, the trial court erroneously prohibited the plaintiff's expert from testifying about a conversation he had with the same official where Newfell allegedly denied he had approved the changes. The trial judge excluded the expert's testimony on the basis that the denial could not form a basis for the expert's opinion. Nonetheless, the denial of approval could have been allowed as this was an admission of a party opponent. *See* N.C. Gen. Stat. § 8C-1, Rule 801(d) (2003). Even though the U.S. Government was not a named defend-

ant, the denial casts doubt on defendant's assertion that the chairs submitted were properly approved.

We also believe defendant cannot rely on this defense as there was no evidence that defendant warned DOT that these chairs were not for use on interchange. For this point defendant merely asserts that plaintiff immediately recognized the danger, thus relieving defendant of this duty. The contract was admitted into evidence and was never changed to reflect use as a caboose for some purpose other than an interchange. Furthermore, defendant acknowledges the caboose was being so used at the time of the accident. This judicial admission supports the requirement that defendant had to warn the Government of the consequences of deviating from the type of chair specified. In light of our ruling that the issue of contributory negligence is an issue for the jury in this case, defendant cannot rely on plaintiff's initial belief that the chair may be dangerous to avoid a duty defendant had prior to delivery.

For the reasons set forth in this opinion, we reverse the order of the trial court directing a verdict in favor of defendant and order a new trial.

New trial.

Judges McGEE and ELMORE concur.